In the Matter of the Marriage of

GAUTIER,
*Respondent,*
*and*
GAUTIER,
*Appellant.*

(No. D7801-01554, CA A22025)

648 P2d 1308

Brad Littlefield, Portland, argued the cause and filed the brief for appellant.

Gino G. Pieretti, Jr., and Katherine H. O'Neil, Portland, argued the cause for respondent. With them on the brief was Schwabe, Wiliamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Father appeals from a trial court order requiring him to move to Oregon from California or lose custody of the parties' children. On *de novo* review, we reverse.

The parties separated after a seven-year marriage. Father obtained physical custody of the children in 1976. A 1978 dissolution decree awarded father legal custody. In 1980, father was laid off work. After unsuccessfully seeking work in Oregon for three months, he found a job in the San Francisco area. Upon learning that father planned to move the children to California, wife obtained an order which temporarily enjoined him from removing them from Oregon. That order was later vacated, and, pending a hearing, father was permitted to take the children to California on the condition that they would visit their mother in Portland every fourth weekend, the parties to divide equally the transportation costs. Mother was also permitted frequent telephone contact. Although not without problems, this arrangement apparently worked reasonably well.

After a hearing in April, 1981, the trial court entered an order continuing custody in father, subject to the following condition:

"As of September 1, 1981, the children are to be living with [father] at a location within a reasonable geographical proximity to Portland on a permanent basis.

"Custody of the children shall be changed to [mother] if [father] is not residing at a location with a reasonable geographical proximity to Portland on a permanent basis with the chldren as of September 1, 1981 * * *

"* * * * *"

The trial court stated:

"First of all, [father] impresses me as a caring parent and one who sincerely has the children's needs at heart, although he does have some problems which he has not been able to put aside in his past dealings with his former wife. The children seem to be doing well in his custody. It's difficult to tell whether they are doing well because of his custody or whether they are doing well because of their geographical location. *I tend to think it is because of his*

*custody* and not where they are living. Therefore, I think they would do as well in his custody in Portland as they would do [in California]." (Emphasis added.)

The trial court apparently thought that both parents were entitled to close proximal contact with the children and that the only way to accomplish that objective was to require father to return them to the Portland area where they would be convenient to mother. Father correctly but unsuccessfully argued that the same objective would be accomplished if mother moved to California.

Three experts testified at the hearing that, generally, it is ideal for children to be in close proximity to both parents. Mother's therapist stated that it would be in the best interests of the children to have a continuous and natural relationship with her and that they should return to Portland, that the bonding process between mother and child is critical to a child's emotional health, especially at the age of the parties' children, and that the benefits accruing from close proximity would be the same if mother moved to California. He did not interview father or the children.

Dr. Stubbs, a child psychiatrist, agreed that it would be ideal if the children could be in close proximity to both parents. He recommended, however, that they should remain with their father, even if he refused to return to Oregon:

"My feeling is that if the court were to decide that Mr. Gautier should move back to Oregon — if [father] were to decide not to comply with that and he were not to move, I would still recommend that the children be with the father rather than be with the mother."

On further questioning by the court, Dr. Stubbs said:

"[R]ather than having the children revert to the mother's custody, [I] would recommend that the children be with their father. * * * Not revert to the mother's custody."

Mrs. Cox, a court counselor, performed a custody study in the case in 1978, and another in 1981, at which time she interviewed the entire family. She testified that, despite the distance between the parties and the length of time the children had been in California, mother and

children enjoyed a good relationship. She found that the children were happy in California and involved in constructive activities. They had made friends and regularly saw their grandparents and cousins, who live near their California home. Mrs. Cox agreed that ordinarily it is in the best interests of the children to be in close proximity to both parents; however, she felt strongly that forcing father to return the children to Oregon would cause more problems than it would solve. Her conclusion was based in part on the continuing animosity between mother and father. She predicted that the conflict between the parties would be magnified greatly if father was *forced* to return to Oregon in order to retain custody of the children. In her written report to the court, Mrs. Cox concluded that:

" * * * the best interests of these children can be met by remaining with the father and allowing him to make the choice where he lives. * * * [T]he mother should have liberal visitation * * *."

Other witnesses also testified that the children were doing well in California. Mother's brother-in-law testified that he found them happier, more mature and calmer since being in California.

At the conclusion of the hearing, the trial court said:

"I think it would be difficult for [father] to move, but I also have some feeling from his testimony that he cares enough about his kids that he probably will wish to make some accommodation. I don't know how that will happen. My strong preference is that the children remain with Mr. Gautier in the Portland area because I think he is doing a good job with his kids from the standpoint of his custody, not so much as the geographical location. I think he is an adequate custodial parent * * *."

Our primary concern is the best interests of the children. ORS 107.137(1) provides:

"(1) In determining custody of a minor child * * * the court shall give primary consideration to the best interests and welfare of the child. In determining the best interests and welfare of the child, the court may consider the following relevant factors:

"(a) The emotional ties between the child and other family members;

"(b) The interest of the parties in and attitude toward the child; and

"(c) The desirability of continuing an existing relationship."

The best interests of the children are not determined by isolating one of these factors, or any other relevant factor, to the exclusion of others. ORS 107.137(2).

Father had permission to take the children to California. The effect of the trial court's order is to require him to quit his job and move back to the Portland area or lose custody of the children. Should father elect to keep his job, the children will be uprooted from their present satisfactory environment where they are "doing well" and will be removed from the custody of the parent the trial court itself has found to be the appropriate custodial parent.

The trial court appears to have isolated close proximal contact with mother as a basis for its decision, to the exclusion of other relevant factors. While close proximal contact is important in determining the best interests of a child, it may not be relied on to the exclusion of other factors in determining what is in the best interests of the children. ORS 107.137(2).

The trial court found that the children are happy and that father is providing them with a good and stable environment in California. We conclude that the best interests of the children will be served if they remain with their father, even if he does not return to Oregon. *See Ditto and Ditto,* 52 Or App 609, 614-15, 628 P2d 777, *rev den* 291 Or 504 (1981) (relying on expert testimony, the court concluded that it was in best interests of children for custodial parent to take children to live with her and her new spouse in a foreign country.)

Reversed. Costs to appellant.