Argued and submitted February 27, affirmed June 1,
reconsideration denied July 16,
petition for review denied August 25, 1981 (291 Or 504)

# In the Matter of the Marriage of

## DITTO,
*Respondent,*

### *and*

## DITTO,
*Appellant.*

### (No. 76-5382, CA 18765)

628 P2d 777

Stanton F. Long, Eugene, argued the cause for appellant. On the brief were Joyce Holmes Benjamin, and Johnson, Harrang, Swanson & Long, Eugene.

Kenneth A. Morrow, Eugene, argued the cause for respondent. With him on the brief was Morrow, McCrea & Divita, P.C., Eugene.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

The parties' marriage was dissolved by decree entered May 5, 1977, at which time mother was granted custody of the parties' two minor children. Subsequently, after mother indicated her intentions to remarry and move with the children to New Zealand, father filed a motion to modify the decree to grant him custody of the two children. Mother then moved to modify the decree to permit her to move to New Zealand, taking the children with her. The trial court denied the father's motion and granted that of mother.

The dissolution decree provided:

"[Mother] shall not move the residence of the minor children of the parties outside the state of Oregon without further written agreement of the parties or further order of the Court."

The property settlement agreement entered into by the parties, which was incorporated by reference into the decree, provided:

"As a supplement to the provisions of paragraph 3 providing child support and visitation, it is agreed that Wife shall not move the residence of the minor children of the parties outside the state of Oregon without further written agreement of the parties or further order of the court. The purpose of this provision is not to confine Wife's residence within the state of Oregon, but to assure, in the event Wife moves from the state, that meaningful visitation arrangements are agreed by the parties, or if they are unable to agree, provided by the court."

The trial court's decision was rendered prior to the Supreme Court's opinion in *Smith and Smith,* 290 Or 567, 624 P2d 114 (1981): the trial court relied on *Meier and Meier,* 286 Or 437, 595 P2d 474 (1979), which held that the best interests of the children is the controlling factor in such cases.

In *Meier,* the parties had entered into an agreement which provided that wife should have custody of the children and that she would not change the residence of the children without the prior order of the court. Previously, in *Perley v. Perley,* 220 Or 399, 349 P2d 663 (1960), the

Supreme Court affirmed the modification of a decree permitting the mother to take the children to Minnesota, when the original decree provided that she could take the children out of Oregon only with the permission of the court. In *Perley,* the court stated that in the absence of a provision in the decree to the contrary, the custodial parent had the right to move to another state and take the children. Although the court affirmed the modification order based upon the paramount consideration of the welfare of the children, it left the implication that if the decree said nothing, the mother would have had the right to move to another state and take her children with her without the express consent of the father and without an order of the court. That implication carried over to the court's opinion in *Meier,* where the court observed that the parties had agreed that the court would determine whether the child could be moved out of the state.

Here, we have a variation of the decree in *Perley* and of the agreement in *Meier,* because, notwithstanding the provision in the decree, the property settlement agreement spelled out the purpose of that provision and emphasized that its purpose was not to confine wife to residence in Oregon, but was to assure meaningful visitation arrangements were made in the event wife moved from the state.

In *Smith and Smith, supra,* neither the decree nor agreement of the parties prior to dissolution contained any provision with respect to the right of the custodial parent (the mother in that case) to move outside of Oregon with the children. The trial court denied father's motion for change of custody and awarded custody to the mother if she resided in the Portland area, but ordered that if she moved from Portland custody would be awarded to the father. We affirmed, per curiam, 47 Or App 110, 613 P2d 763 (1980), citing *Meier and Meier, supra,* and the Supreme Court affirmed this court.

■ *Smith and Smith, supra,* tells us that the significance of a provision in a decree or in a settlement agreement between the parties, incorporated in the decree of dissolution, is procedural: if there is a prohibition in the decree or agreement against the custodial parent's moving with the children outside of the state without a further

order of the court, the custodial parent must obtain court approval prior to moving in order to avoid the risk of being held in contempt for violating the decree. If there is nothing in the decree or agreement relating to such a move, the non-custodial parent must take action to attempt to prevent the move. In this case, if the agreement is applied literally, the only question at a hearing to obtain approval for the move would be what "meaningful visitation arrangements" need be made. However, *Smith* makes it clear that the court must determine in all cases whether the move is in the best interests of the children.

Father contends in this court that the trial court did not make a finding that the mother's move with the children to New Zealand was in the best interests of the children, and, therefore, he contends that we should reverse. We conclude that the record supports the conclusion that the children's move with the mother to New Zealand is in the best interests of the children and that the trial court implicitly reached that conclusion even though it did not use the magic words. We recognize that in most cases it is difficult to establish, in the abstract, what is in the best interests of the children—other than to say that they would probably be better off if their parents had been able to get along and had kept the whole family intact. Given the facts that their parents have dissolved their marriage and that each has remarried and that each, with a new spouse, has plans for their respective lives, the question becomes: which of the multiple choices available is best for the children? In many cases, the happiness and well-being of the custodial parent becomes an ingredient of the welfare of the children.

We need not detail the facts. It is sufficient to point out that since the original decree in May, 1977, both parties have been loving parents. Father has exercised his generous visitation rights faithfully, and both children have enjoyed those visits. In August, 1979, mother met Edward Tingey, a New Zealand chartered accountant, then employed in Los Angeles. Tingey left that job to accept an offer, which included a promise of a partnership, with a firm in his home in Wellington, New Zealand. By the end of January, 1980, mother and Tingey had made plans to

marry and move to New Zealand with the two boys, the subject of this proceeding. They were married in July and spent two weeks in New Zealand, where they purchased a home and arranged for the boys' school.

At the hearing, a child psychiatrist, whom both parties acknowledge to be an expert in his field, testified that he saw the children twice, once with each parent. He also submitted a report, which is in the record. He expressed the opinion that both parents and their respective new spouses would provide a good home for the children. His report went on to state, in part:

"* * * It was clear * * * that the setting in Wellington, New Zealand would likely be an easy transition for the children and could be a setting in which they could flourish and grow. * * *

"* * * Brandon Ditto was a six year old boy who was clearly excited about moving with his mother to New Zealand indicating that he knew it was far away ('7000 miles') and that he wouldn't be able to see his father as often, but could visit with him. * * * He was aware that he would have to make new friends, he clearly was very attached to his mother and wanted to go with her. * * * There was not [sic] sign of disturbance in this young child. It was clear that he was very attached to his brother, as well as his mother, * * *. On the second visit on August 5, 1980 he continued to present as an active youngster, clearly wanting to be with his mother, and preferring a Judge to allow him to be with his mother, * * *.

"* * * Chris also clearly indicated initially that he wanted to go with his mother to New Zealand. He was excited, though at the same time aware of less time with his father. He wanted to be assured of several visits with his father each year if he was to move that far, stating that he wanted to visit twice in addition to summers. * * * There was no evidence of emotional disorder in this young man. * * * clearly reacted when asked by this examiner how he would like father to have custody and have him visit mother instead of the other way around. Clearly there was a maternal need yet, * * *.

"In this examiner's perspective these are two children who have significant attachments to both parents but who appear at this point in time to have a significant maternal need. * * * In addition, Brandon particularly appears to have a strong maternal attachment at this age and though

these children are likely very resilient, and though the stepmother would undoubtedly provide a positive environment, it is clear that Brandon has a strong attachment to his biological mother. From a psychiatric standpoint there is no apparent indication why these children could not do well if taken to New Zealand. * * *"

The trial judge indicated that he was "applying the test in *Meier,* that it is appropriate that there be a modification of the decree" to permit the children to be taken by mother to New Zealand. Because the test in *Meier* is framed in terms of the best interests of the children, the reasonable inference is that the trial judge's reference was to that test. The judge amplified his conclusion from the record in responding to father's subsequent request for a stay, when the judge stated:

"* * * We have had expert testimony as well as testimony of others that these children are looking forward to this * * * I'm of the opinion it would have a lot of positive benefits. * * * I don't think there'd be emotional disturbance to the boys to go to New Zealand. In fact, they probably would suffer certain amount of disappointment if suddenly it was not possible for them to go to New Zealand."

The trial court's determination of this issue is highly persuasive. *Meier and Meier, supra; Smith and Smith, supra.* The order modifying the decree provides for extensive visitation rights and requires mother to pay the round-trip transportation costs for the children's Christmas visitation trip each year.[1]

We affirm the order of the trial court. No costs to either party.

---

[1] The relevant portions of the order are:

"* * * * *

"2) That [mother's] motion be and is hereby allowed and the Decree, as modified prior hereto, is modified as follows:

"(a) [Mother] is permitted to move the residence of the minor children to New Zealand.

"(b) [Father] shall be allowed reasonable visitation which shall include visitation at [father's] home during all three New Zealand school vacation periods which occur approximately December 19th through January 31st, May 9th through May 25th, and approximately three weeks at the end of

August and beginning of September; and shall have visitation in New Zealand during such periods as [father] can be there.

"(c) [Father's] duty to pay support shall be reduced from $250 per month per child to $125 per month per child through May, 1982, at which time child support shall become the sum of $225 per month per child.

"(d) [Mother] shall pay round-trip transportation costs for the Christmas trip each year from New Zealand to [father's] home; and [father] shall pay for any other trips.

"(e) [Mother] shall cause this Decree, as modified herein, to be registered in the New Zealand courts.

"(f) That this Decree shall constitute a charge in the sum of $20,000 against [mother's] real property described in Appendix 'A', attached hereto and made a part hereof. In the event that [mother] fails to comply with any portion of the Decree, as herein modified, [father] may apply to the Court to have said real property sold and net proceeds to the extent of this charge forfeited to him or applied to any legal expenses incurred by him because of said failure by [mother]."

The validity of paragraph 2(f) is not before us, and we express no opinion with respect to it.