No. 83-89

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

IN THE MATTER OF THE CUSTODY OF
R.L.S. and T.L.S.,

Petitioners and Respondents,

vs.

CARLA JEAN BARKHOFF, a/k/a ENGDAHL,

Appellant and Respondent.

---

Appeal from:  District Court of the Tenth Judicial District,
In and for the County of Fergus
Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Appellant:

William E. Berger, Lewistown, Montana

For Respondents:

Berger Law Firm, Billings, Montana
Torger Oaas, Lewistown, Montana

---

Submitted on Briefs: September 2, 1983

Decided:   December 16, 1983

Filed:  DEC 16 1983

_Ethel M. Harrison_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal is the second time the custody dispute over these two children has reached this Court. The first decision, Sayer v. Barkhoff (Mont. 1981), 632 P.2d 703, 38 St.Rep. 1328, reversed the District Court ruling and remanded it for futher proceedings. On remand the Honorable Nat Allen assumed jurisdiction from the Honorable LeRoy McKinnon at the request of the parties, and a new trial was held. This appeal is taken from the District Court ruling granting attorney fees before the second trial, and from the ruling granting modification of a Wyoming custody decree.

The second trial was a series of accusations and counter accusations as to the unfitness of the opposing party to raise the children. From the record the few uncontroverted facts appear as follows. Appellant, hereinafter Mother and respondent, hereinafter Father, are the natural parents of R.L.S., born October 7, 1975, and T.L.S., born October 1, 1976. When the children were born, the couple resided together in Sheridan, Wyoming, without the aid of marriage. They separated in the summer of 1979, and initially Father retained custody of the children. Following several extralegal attempts to gain custody, Mother petitioned a Wyoming District Court for, and was granted, a writ of habeas corpus giving her custody of the children. Finally the parties signed a custody agreement in settlement of a paternity suit brought by Father.

The agreement established Father's paternity, but gave primary custody of the children to Mother and a reasonable

right of visitation to Father. Specifically Mother was to have the children the first six months of each year and Father the last six months until each child reached school age. When each child started attending school, Mother would have custody during the school year and Father during the summer months.

Sometime thereafter, Mother and the children left Sheridan and moved to Lewistown, Montana. Father petitioned the District Court of the Thirteenth Judicial District, Yellowstone County, for a modification of the custody decree, seeking primary custody. Mother answered and cross petitioned seeking sole custody herself. Venue was subsequently changed to the Tenth Judicial District, Fergus County, where a non-jury trial was held.

On December 1, 1980, the District Court entered its findings of fact and conclusions of law, granting the Mother sole custody of the children, and limiting the Father to one month's visitation during the summer. The evidence at this trial was limited to testimony about events occurring after the Wyoming decree was issued, and this Court held that was error. On August 20, 1981, the case was reversed and remanded to the District Court for further proceedings. Mother moved the District Court on September 23, 1981, to grant her attorney fees for both the first trial and the appeal. After a hearing the motion was granted on January 28, 1982.

The second trial commenced on August 5, 1982. At this point the uncontroverted facts nearly disappear, and the parties tell almost diametrically opposed stories. At the second trial, Father attempted to show that Mother's

housekeeping skills were nill, that she neglected the children and beat them, that she abused alcohol and drugs, that her living arrangements were very unstable and posed an unhealthy environment and she could not hold a job. Mother attempted to show that Father abused alcohol, had a violent temper and was brainwashing the children into believing she had abandoned them. Both sides presented numerous witnesses in support of their respective stories. On October 25, 1982, the District Court entered its findings of fact, conclusions of law and order.

The court found the environment in the Mother's home endangered their physical, mental, moral and emotional health, that any harm likely to be caused to the minor children by a change to Father's custody, would be outweighed by the advantages and that it was in the best interest of the children to modify the decree. It was ordered that the custody of the children be changed to Father and that Mother have limited rights of reasonable visitation. This appeal followed.

Four issues are raised by the parties:

1. Did the District Court err by photocopying and adopting verbatim Father's proposed findings of fact and conclusions of law?

2. Did Father show sufficient facts from which the District Court could order a modification of the custody decree pursuant to Section 40-4-219, MCA?

3. Did Father show sufficient facts from which the District Court could limit Mother's visitation pursuant to Section 40-4-217, MCA?

4. Did the District Court err by awarding attorney

-4-

fees and expenses to Mother for the first trial and appeal, and not the full amount of her attorney fees for the second trial?

Mother also seeks an award of $1,000 for attorney fees of the present appeal.

Mother asserts the trial court abused its discretion by photocopying Father's proposed findings of fact and conclusions of law, and argues that since the evidence was conflicting the trial court should have been more careful to exercise its own judgment. Finally she points out certain facts found by the District Court which she claims are not supported by the record.

This Court has consistently held that it is not good practice for the District Court to adopt verbatim one party's proposed finding of fact and conclusions of law because it may lead to error. Tomaskie v. Tomaskie (Mont. 1981), 625 P.2d 536, 38 St.Rep.416; In Re Marriage of Beck (Mont. 1981), 631 P.2d 282, 38 St.Rep. 1054. However, once the District Court adopts findings and conclusions they become the court's own, and may not be overturned on appeal unless they are clearly erroneous under Rule 52(a), M.R.Civ.P. Speer v. Speer (Mont. 1982), 654 P.2d 1001, 39 St.Rep. 2204. There is no more than a technical difference between photocopying one party's proposed findings and conclusions and adopting them verbatim, the legal effect is the same. As the cases cited above show, even if the District Court adopts one party's proposed findings and conclusions verbatim, the "clearly erroneous" standard applies on appeal. When the findings and conclusions are not clearly erroneous and are supported by the record, the

judge has not abused his discretion by ratifying the proposals of one party.

The record in the case at bar contains two stories, and it is difficult to imagine how they could be farther apart. We note that although Father requested the District Court to order an investigation of the "[H]ome, life style, living conditions and stability," of Mother by the Department of Social and Rehabilitation Services, no order was issued. Section 40-4-215, MCA, gives the District Court the discretion to order such an investigation, and we have ruled that absent an abuse of this discretion, it is not error to fail to make such an order. Schiele v. Sager (1977), 174 Mont. 533, 571 P.2d 1142. However, where the respective tales are nearly irreconcilable as here, it is possible that the true facts may not be ascertained by oral testimony alone, and an independent investigation may aid the court immensely. In the future though, District Courts would be well advised to make use of this tool to avoid having to rule simply by choosing between two incredible stories.

Approximately five percent of the pertinent facts are agreed on by the parties, the remainder being stubbornly contested by both sides. When the testimony is conflicting and the credibility of the witnesses is the determinative factor, it is the function of the trier of fact to set forth the correct facts. Cameron v. Cameron (1978), 179 Mont. 219, 587 P.2d 939. On appeal this Court views the evidence in the light most favorable to the prevailing party, and if there is substantial evidence to support the lower court's findings they will not be overturned, Cameron, supra.

Though the evidence conflicts with other evidence, it may still be substantial. Campeau v. Lewis (1965), 144 Mont. 543, 398 P.2d 960.

If the District Court Judge in this case found Father's witnesses more credible, the findings of fact made were clearly not erroneous. Several witnesses testified to Mother's sloven housekeeping habits and lifestyle. She admits she has held several different jobs in the past few years and was fired from one for being habitually late. There was ample testimony of her abuse of alcohol and drugs in the presence of the children since her move to Lewistown. Mother admitted having changed residences at least five times in the two years before trial, and is presently receiving no steady income. There was also physical evidence in the form of photographs introduced at trial, showing bruises on the body of R.L.S., along with testimony that one of the persons with Mother had beat the child.

Mother points out specific facts which she claims are not supported by the record. We have examined the record and find her assertions incorrect. At best there is contradictory evidence concerning each claimed error and as stated above we must defer to the judgment of the trial court where the findings are based on conflicting evidence.

The record contains substantial credible evidence to support the District Court's findings of fact and conclusions of law. Viewing the record in the light most favorable to the prevailing party, the court clearly acted within its discretion as trier of fact.

The second issue raised by Mother is whether there is a sufficient change in circumstances to warrant a

modification of the custody decree pursuant to Section
40-4-219(1)(c), MCA, which provides that:

> "The court shall not modify a prior
> custody decree unless it finds, upon the
> basis of facts that have arisen since the
> prior decree or that were unknown to the
> court at the time of entry of the prior
> decree, that a change has occurred in the
> circumstances of the child or his
> custodian and that the modification is
> necessary to serve the best interest of
> the child. In applying these standards
> the court shall retain the custodian
> appointed pursuant to the prior decree
> unless:
>
> ". . .
>
> "(c) the child's present environment
> endangers seriously his physical, mental,
> moral, or emotional health and the harm
> likely to be caused by a change of
> environment is outweighed by its
> advantages to him."

The statute sets out a two part test. The first part of the test contains two subparts which bear a qualifying relation to each other. Gilmore v. Gilmore (1975), 166 Mont. 47, 530 P.2d 480. There must be a change of circumstances, but that change is not measured in a vacuum. The change must be significant enough in relation to the best interests of the child that those interests are no longer served by the decree in force. The best interests of the child in a modification proceeding are judged by the criteria of Section 40-4-212, MCA. Schiele v. Sager (1977), 174 Mont. 533, 571 P.2d 1142. The second part of the test also involves two subparts which bear less of a relation than those above, but are intertwined nonetheless. The primary custodian may not be changed unless the court finds the enumerated dangers exist, and the advantages of change outweigh the disadvantages. As mentioned above, the facts found by the trial court are supported by the record and are

thus applied to the test set out in the statute.

The District Court did not enumerate the facts which met each part of the test. However, this court will look through the form to the substance of the trial court's findings. In Re the Marriage of A.R.C. v. C.K.C. (Mont. 1983), 661 P.2d 459, 40 St.Rep. 499. The facts, as found by the court, clearly show a change in circumstances of Mother and the children.

Mother has removed the children from the Sheridan, Wyoming, area to Lewistown, Montana, several hundred miles from Father. When Mother was granted custody, she held a steady job in Sheridan, but since that time she has bounced from job to job and at the time of trial had no steady means of support. Mother has also developed a habit of changing residences every few months and maintained what could be termed "communal" living arrangements because of the large number of different persons residing with her on both temporary and permanent bases. The children have been left with a variety of young babysitters or with none at all. Mother was incarcerated and fined for conducting herself in a disorderly manner at a Lewistown bar during the time she had custody of the children. There was also evidence that both Mother and members of her household had struck and physically abused the children. This is by no means an exhaustive list of the changed circumstances; suffice it to say that the evidence clearly supports the District Court's conclusions of law numbers 2, 3 and 4. The children's environment with Mother, "endangers seriously their physical, mental, moral and emotional health." "[T]he harm likely to be caused to the minor children by a change of

environment to that of the natural father is most certainly outweighted by its advantages to the minor children;" and "modification is necessary to serve the best interests of the minor children."

Next, Mother contends that the District Court erred by limiting her visitation because there was no finding that visitation would endanger the children, nor would the record support such a finding.

The Wyoming custody decree gave both parties reasonable visitation rights while the children were in the care of the other parent. Thus, the District Court's restriction of Mother's visitation is governed by Section 40-4-217(3), MCA, which sets out the applicable standard. A parents' visitation rights may not be restricted unless the court finds that the visitation would, "[e]ndanger seriously the child's physical, mental, moral or emotional health." We note that this is the same standard used to judge the modification of custody decrees in Section 40-4-219, MCA.

Applying the facts found by the trial court, there is clearly no error here. The facts discussed in deciding the previous issue all support the District Court's decision to limit Mother's visitation. Specifically in conclusion of law number 2, the court found, "That the minor childrens' environment with the natural mother endangers seriously their physical, mental, moral and emotional health." This Court will look through the form to the substance of the District Court's ruling, A.R.C., supra, and the District Court apparently felt that this unhealthy environment existed when the children visited Mother as well as when she had custody of them. The visitation rights were adjusted

accordingly, and we find no error in that ruling.

The fourth issue is raised by both Father, who contends that the District Court erred by granting Mother attorney fees for the first trial and appeal, and Mother, who contends the District Court erred by not granting her the full amount of attorney fees requested for the second trial. The chronology of events must be elaborated here to provide a context for discussion of this issue. The District Court entered its findings of fact and conclusions of law and order for the first trial on December 1, 1980. Mother had requested attorney fees in her answer to Father's petition for modification, but none were granted by the District Court in its December 1, 1980, order. Father filed his notice of appeal on December 30, 1980. This Court reversed the District Court ruling on August 20, 1981, and remanded for further proceedings.

On December 28, 1981, Mother moved the District Court to grant her attorney fees for the first trial and appeal, and for future costs of the second trial. Briefs were submitted and arguments made before the District Court, and the motion was granted on January 28, 1982. Father was ordered to pay over to the clerk of court $1,500 representing Mother's attorney fees for the first trial and appeal, and $700 for future attorney fees. The money was deposited with the clerk of court and Mother's attorney received the entire amount by August 23, 1982. The second trial concluded on August 30, 1982 and this appeal followed.

Father contends the District Court was without jurisdiction to grant attorney fees for the first trial and appeal, and we agree. Mother's motion was made pursuant to

-11-

Section 40-4-110, MCA, which allows attorney fees in certain domestic relations cases. However, since the judgment did not provide for attorney fees, the judgment must have been amended before either party could be ordered to pay those fees. A motion to amend a judgment must be made within ten days of its entry, Rule 59(g) M.R.Civ.P. This rule applies to requests for attorney fees, and is not overridden by Section 40-4-110, MCA. McDonald v. McDonald (1979), 183 Mont. 312, 599 P.2d 356. Since Mother's motion was made more than a year after the judgment was entered, it was untimely and the District Court was without jurisdiction to grant attorney fees for the first trial.

The District Court was also without jurisdiction to grant Mother attorney fees on appeal when the matter first appeared before this Court. The first opinion did not address the request, thus it is deemed denied. That tacit denial is as effective as if set out explicitly in the opinion, and it is part of the judgment of this Court. Lloyd v. City of Great Falls (1939), 107 Mont. 588, 87 P.2d 187. On remand, the District Court has no power to modify the judgment of the Supreme Court. State Ex Rel. Vaughn v. District Court (1941), 111 Mont. 552, 111 P.2d 810. Since this Court essentially ordered each party to bear its own attorney fees, the District Court erred by ordering Father to pay Mother's attorney fees.

Mother claims that the judgment in the second trial should have contained an award of the remaining amount of her attorney fees incurred for that trial. Her reasoning is that the January 28, 1982, order granted her future attorney fees, which she interprets to mean all attorney fees.

However, the order granted a specific amount and did not make a blanket award. Section 40-4-110, MCA, gives the District Court discretion in awarding attorney fees, and absent an abuse of discretion its ruling will stand. Harris v. Harris (Mont. 1980), 616 P.2d 1099, 37 St.Rep. 1696.

Finally, Mother requests an award of attorney fees incurred for this appeal. The record contains affidavits of both parties with respect to their financial affairs, which disclose that neither party is receiving an inordinate amount of income over their necessary expenses. In light of the foregoing opinion affirming the District Court, it is ordered that both parties bear their own attorney fees.

From the record of this case, it is apparent that neither parent has provided an ideal environment for raising the children. Given that the District Court has continued jurisdiction over child custody matters, see Erhardt v. Erhardt (1976), 171 Mont. 49, 554 P.2d 758, the District Court is hereby ordered to direct the Department of Social and Rehabilitation Services or other appropriate public body, to conduct periodic investigations and make reports of the living conditions and environment of both parents as it may relate to the welfare of the children. This order is made pursuant to Section 41-3-201, MCA, et seq., and is to remain in effect for one year from the date of its entry by the District Court, unless that court deems an extension necessary. Since the children will spend the majority of their time with their Father and thus may be in Wyoming, the District Court shall empower the Department to obtain whatever cooperation and assistance is necessary from the agencies of that state to carry out the order.

Affirmed in part, reversing award of attorney fees.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices


Mr. Justice Daniel J. Shea, specially concurring:

Although I would affirm the result, I emphasize again that the process of adopting verbatim the proposed findings and conclusions of the prevailing party is demeaning to the judicial process.

_____
Justice