No. 89-443

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

MONTE DEAN LORENZ,

           Petitioner and Appellant,

  -vs-

MELANIE JANE LORENZ, n/k/a MELANIE JANE
WANGERIN,

           Respondent and Respondent.

APPEAL FROM:   District Court of the Seventh Judicial District,
               In and for the County of Richland,
               The Honorable H. R. Obert, Judge presiding.

COUNSEL OF RECORD:

    For Appellant(s):

        Phillip N. Carter; Koch & Carter, Sidney, Montana

    For Respondent(s):

        Peter O. Maltese, Sidney, Montana

Submitted on Briefs: Jan. 25, 1990

Decided: March 9, 1990

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The parties' marriage was dissolved in the District Court for the Seventh Judicial District, Richland County, in May 1988. The parties were granted joint custody of their two minor children. Monte Dean Lorenz now appeals the court's June 1989 order that the children's primary residence be with their mother, Melanie Jane Lorenz, who has moved to Canada. We affirm.

The issues are:

1. Are the District Court's findings, conclusions, and order supported by the evidence?

2. Are the court's findings, conclusions, and order sufficiently comprehensive and pertinent to the issues to provide a basis for the court's decision?

3. Does the court's adoption of the mother's proposed findings, conclusions, and order constitute reversible error?

The marriage of Monte Dean Lorenz (father) and Melanie Jane Lorenz (mother) was dissolved in May 1988. They had two children, a girl and a boy, then ages eight and five. Pursuant to the parties' custody, support, and property settlement agreement, which was merged in the decree of dissolution, the parties shared joint custody of their two children. The agreement provided that the children's primary residence would be with the mother.

In July of 1988, the mother discovered she was pregnant. The father, Timothy Wangerin, was a seminary student who had served as

1

a vicar at the parties' church. In what she described as "great emotional turmoil," the mother signed a stipulation that physical custody of the children would be given to the father. Two weeks later, the mother married the vicar and filed her rescission of the stipulation.

In August, the father filed a motion to modify the physical custody of the children so that he could keep them. The mother and her new husband were moving to Edmonton, Alberta, Canada, where he would continue his education. After a hearing lasting several days, the District Court granted temporary physical custody to the father for the 1988-1989 school year.

A hearing on a permanent residency arrangement for the children was held in June 1989. By this time, the mother, her new husband, and their baby were living in Medicine Hat, Alberta, Canada. The father still lived in the same house in Sidney, Montana. After the hearing, the court concluded that it would be in the children's best interests if they resided with their mother during the school year and with their father during the summer. From that order the father appeals.

I

Are the court's findings, conclusions, and order supported by the evidence?

The father challenges the following finding made by the District Court:

IV.

The parties executed an Agreement to Modify Custody, Support and Property Settlement Agreement and Decree of Dissolution of Marriage on July 12, 1988. Thereafter, the Respondent filed her Recission [sic] of Agreement to Modify Custody, Support and Property Settlement Agreement and Decree of Dissolution of Marriage on the basis that the Petitioner induced the Respondent to sign the Agreement with several promises, many of which were not kept; that prior to the time of signing the instrument, the Petitioner exerted great pressure on the Respondent to sign the Agreement, at a time when the Respondent was suffering great emotional turmoil.

The father argues that the record does not support the reasons stated in Finding IV for the mother signing the stipulation. He also maintains that there was no evidence that he caused any emotional turmoil the mother may have been suffering at that time.

The mother testified that,

There were promises made to me when I signed it. There were threats made to me when I signed it and other general statements.

Q. You say that there were threats made to you.

A. Yes.

Q. And what were those threats?

A. One of them was a big, ugly legal battle if I didn't sign it, which has come true. He told me -- Monte told me to tell Tim that if he came to town he would kill him. He told me that he would do everything in his power to

3

> prevent his children from living with me and Tim, that he would do whatever he had to to prevent that.

The above testimony supports Finding IV. We conclude that the finding was not error.

The father next challenges Finding VI, which stated that the mother had been the primary caretaker of the children. The mother testified that she worked as a beautician three to four days per week during the last two years of the marriage, but that prior to that time she had been at home. She testified that the first year she worked outside the home, she had a babysitter for the children. The second year, the father cared for the boy after he got out of kindergarten at 11:30 and until the mother was done working, according to her testimony. The mother testified that it was always her job to get the kids ready to go to school. She stated that the father did not have much to do with the children's upbringing. We conclude that this was substantial evidence to support Finding VI.

Finding VII is the last one to which the father objects. It stated that each party acknowledged that the other is a fit and proper person to be a custodial parent. At the June 1989 hearing, the father described the mother as "a good mother." He testified that he had never considered her an unfit mother and that she had a good relationship with the children. Moreover, he did not seek

4

to terminate joint custody of the children. We conclude that substantial evidence supports Finding VII.

The father also lists nineteen findings (in his favor) which he submits that the court should have made but did not. These related to the children's adjustment to their home, school, community, extended family, and church in Sidney, Montana. This Court has held that a district court "is not obligated to outline all of the testimony presented at trial in its findings of fact." McConnell-Cherewick v. Cherewick (1983), 205 Mont. 75, 83-84, 666 P.2d 742, 746. We will discuss, under Issue II, whether the District Court made sufficient findings to support its conclusions and decision.

## II

Are the District Court's findings, conclusions, and order sufficiently comprehensive and pertinent to the issues to provide a basis for the court's decision?

Section 40-4-224(2), MCA, states that in joint custody, allotment of time for physical custody and residence of the children must be as equal as possible between the parents, but each case is to be determined according to its own practicalities, with the best interest of the child as the primary consideration. The father contends that the provisions of § 40-4-212, MCA, regarding the best interest of the child should all have been addressed in the findings in this case.

Section 40-4-212, MCA, lists the following as factors to be considered in determining the best interest of the child: 1) the wishes of the child's parents as to the child's custody; 2) the child's wishes as to his custody; 3) the interaction of the child with his parents, siblings, and any other persons who may significantly affect the child's best interest; 4) the child's adjustment to his home, school, and community; 5) the mental and physical health of all individuals involved; 6) physical abuse, if it is present or threatened; 7) chemical dependency of either parent. This Court has further suggested three related criteria to be considered: the parents' ability to cooperate in their parental roles; the child's relationship with both parents; and the geographic proximity of the parents' residences. In re Custody and Support of B.T.S. (1986), 219 Mont. 391, 395-96, 712 P.2d 1298, 1301.

We now discuss the findings in this case as they relate to the statutory best interest factors. By definition, in joint custody each parent is a fit custodian of the child. The nature of this proceeding makes it clear that both parents desire joint custody and that each wants to be the primary residential parent.

The court stated during the hearing that, in its opinion, the children were too young to express their wishes as to residence. It did not interview them as to their preferences. This Court has stated that the age of the child goes to the weight to be given the

6

child's wishes as to custody. In re Custody of C.C. (1985), 215 Mont. 72, 76-77, 695 P.2d 816, 819.

The court made findings on the interaction of the children with all of the persons they would live with in either household, including their half-sister and the mother's new husband. It found that the mother's new husband interacts well with the children and is interested in their welfare.

This Court has recognized that a custodial parent is presumptively entitled to change her own and the child's residence. In re Marriage of Paradis (1984), 213 Mont. 177, 181, 689 P.2d 1263, 1265. In that context, the children's adjustment to their home, school, and community must be weighed carefully. By definition, in joint custody the children will live in both parents' households with time divided as equally as possible. The court made no findings on the issue of the children's adjustment to their home, school, and community.

The only person on whom there was any adverse evidence as to physical or mental health was the mother's new husband, Tim Wangerin. But the mother presented rebuttal evidence on that issue. The court made no finding.

There was no evidence of physical abuse or chemical dependency on the part of any of the parties, and there were no findings on these factors. Neither did the court make any findings on the parents' ability to cooperate in their parental roles or on the

children's relationship with both parents. The geographic proximity of the parents' residences was addressed in the nine month-three month plan of residential custody.

In this case, the District Court was faced with two suitable custodial parents who desire joint custody and who live at such a distance apart that one will necessarily see less than the other of their school-age children. Prior to the mother's move out of town, the parties had agreed that she would provide the children's primary residence. The court found that the mother does not intend to work outside the home, while the father is a farmer and has a part-time job as a salesman. This Court has stated that a district court need not make specific findings on each statutory factor in determining best interests of children under § 40-4-212, MCA, but need only express the "essential and determining" facts upon which it rests its conclusions. Cameron v. Cameron (1982), 197 Mont. 226, 230-31, 641 P.2d 1057, 1060. While the District Court's findings are not a model of completeness, we hold that they are sufficient to provide a basis for the court's decision.

III

Does the court's adoption of the mother's proposed findings, conclusions, and order constitute reversible error?

The father cites this Court's opinion in Tomaskie v. Tomaskie (1981), 191 Mont. 508, 625 P.2d 536, in which the Court disapproved the practice of adopting proposed findings and conclusions

8

submitted by a party. Since the <u>Tomaskie</u> opinion, this Court has restated its position on district courts' use of proposed findings and conclusions:

> When the findings and conclusions are not clearly erroneous and are supported by the record, the judge has not abused his discretion by ratifying the proposals of one party.

R.L.S. v. Barkhoff (1983), 207 Mont. 199, 206, 674 P.2d 1082, 1086. We hold that the <u>Barkhoff</u> standard has been met.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices