William Kimbrough LOVE,
Appellant (Plaintiff),

v.

Chon Mikkelson LOVE, Appellee
(Defendant).

No. 92–183.

Supreme Court of Wyoming.

May 7, 1993.

Dennis M. Kirven of Kirven and Kirven, P.C., Buffalo, for appellant.

Lawrence A. Yonkee of Yonkee & Toner, Sheridan, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

Appellant William Kimbrough Love appeals the district court's order granting the petition of his ex-wife, appellee Chon Mikkelson Love to change the residence of the divorced couple's minor children of whom she has primary custody. We affirm the court's order permitting Chon Love to relocate with the couple's daughter, Betsy, and reverse and remand the decision regarding change of residence for the couple's son, Alex.

## ISSUES

Appellant brings the following issues on appeal:

The trial court abused its discretion in approving a change of residence of the minor children of the parties.

A. The trial court ignored the clear preference expressed by Alex Love, 15 years old, that he wished to remain in Sheridan, Wyoming.

B. The trial court ignored the undisputed testimony concerning the differences in the quality of education that the children would receive in South Dakota.

C. The trial court erred in disregarding the evidence that the best interests of the children would be served by the residence not being changed from Sheridan by instead considering the interests of the mother.

Appellee states the issues as follows:

The trial court found that appellee's decision to change her residence is in the best interest of the children.

A reasonable decision to relocate made by the custodial parent is presumed to be in the best interest of the children.

Deprivation of visitation does not furnish a basis to deny relocation.

Appellant's claim that Sioux Falls schools are inferior does not establish that a change of residence is contrary to the best interests of the children.

The trial court did not abuse discretion by not changing the custody of Alex Love.

## FACTS

William Kimbrough Love (father) and Chon Mikkelson Love (mother) were married on January 24, 1976, with two children born as issue of the marriage, Edwin Alexander (Alex) on December 8, 1976, and Elizabeth Alayne (Betsy) on April 1, 1981. The parties were divorced on September 1, 1983, and a divided custody arrangement provided that the mother would have custody of both children beginning seven days before the start of the school year until the first day of July. The father was granted custody from July until the mother's custody began again before the start of school. The parties agreed to the following stipulation in the divorce decree:

6.) Change of Residence. The parties agree that the residence of the children will not be changed to a place beyond the radius of 100 miles from the City of Sheridan, Wyoming, unless both parents consent thereto or unless an order of the District Court of Sheridan County, State of Wyoming, has been entered approving such change after notice to both parties and provided that both parties shall have a reasonable opportunity to be heard in Court.

On January 14, 1992, mother filed an application for an order to show cause why she should not be allowed to change her residence and that of her two minor children to Sioux Falls, South Dakota. Father's response asserted that the change in residence would not be in the best interests of the children and that such a relocation is "a sufficient change of circumstance to allow the Court to consider modification of the custodial rights of the children."

The parties stipulated to an examination of the children by a psychologist, Dr. Ray Leugers, and a hearing was held on mother's application for change of residence on July 13, 1992. At that hearing, Dr. Leugers testified that the children were healthy, well-nurtured, had benefitted from contact with both parents and, in his opinion, the present custodial and visitation arrangement would be preferable over a geographic separation. Dr. Leugers' assessment of Alex, fifteen years of age, revealed a "pretty self-sufficient and positive young man" whom he thought capable of making "a reasonable decision in his own best interest" concerning whether he desired to stay in Sheridan or move with his mother. Betsy, in Dr. Leugers' opinion, was a "bright young lady" but with a "high level of social and emotional immaturity." Betsy, age eleven, was described as "much more dependent on both parents" with less maturity and self-esteem than other children her age. In Dr. Leugers' opinion, if the mother were to move, "it would be in Betsy's best interest to have predominant contact with her mother." However, Dr. Leugers outlined the "best case scenario" for Betsy as "continuing contact with both her parents similar to what she's had for the last several years."

Mother's reasons for wanting to move to Sioux Falls were to attend a technical school to obtain a degree in commercial design and find employment in commercial advertising. She testified that this type of program was not available in Sheridan or its vicinity though she could possibly attain her educational objectives through a program of summer school classes over several years in Denver. She saw her opportunities as a 41–year–old woman in Sheridan to be limited. She had previously worked as a licensed practical nurse shortly following the divorce, but did not like that profession. Her only other employment had been at a restaurant for approximately one year. Mother grew up in Sioux Falls and knew it to be an economically-healthy community. From her impressions as an elementary, junior and senior high school student over twenty years ago in Sioux Falls, and information she recently acquired about that school system, mother stated that, compared to Sheridan schools, Sioux Falls schools were "to a certain extent stricter, better disciplined, [with] more emphasis on academics and less on athletics." Mother testified she had extended family members in Sioux Falls though her parents resided in Sheridan. She had not yet enrolled herself or the children in school, nor acquired a job or housing in Sioux Falls. At the time of the hearing, mother had only thirty-six months of alimony payments remaining from father. Mother's reasons for seeking to relocate can be summed up by her testimony in response to the following question:

Q. So this is motivated mostly by your desire that you want to move, is that right, to change your life and you're 41 years old and you're concerned about your future?

A. I'm concerned about my future definitely and my future, of course, has to do also with Alex and Betsy's future. I think it's important for Alex and Betsy to have a mother who is happy, self-supporting and independent and who lives where she prefers to live.

Mother described the children as "physically attractive, very healthy, very confident, very stable, good students, athletically-inclined." She described her relationship with Betsy as "very close," predicted Betsy would get along "very, very well" in Sioux Falls, and stated that "Betsy needs to be with her mother."

Mother's testimony reflected her understanding of Alex's desire to stay in Sheridan to finish his last three years of high school and be with his friends. She stated that "if I am granted permission to leave, I would be sad because I love him and we're very close, but I think that he's old enough to make his decision, and I would respect his wishes."

Father's testimony revealed significant involvement with the children, including exercising his weekend and summer visitation rights, providing music lessons, attending teacher conferences, athletic events and concerts that the children participate in, and monitoring grades. Father, a school board member, compared Sioux Falls and Sheridan schools in performance on standard achievement tests, per student spending, teacher's salaries, and and drop out rates and concluded that the "schools in Sioux Falls are not nearly of the quality they are here in Sheridan." Father testified that because of the children's increasing summer activities, such as summer jobs and camps, his weekend visitations have become more important. He stated that because of the distance between Sioux Falls and Sheridan, necessitating a day's drive each way, his weekend visitation would be "non-existent" as it would be "pretty difficult" to travel twice a month to visit his children if mother were to relocate.

On July 27, 1992, the district court issued an order granting that "the residence of the minor children of the parties may be changed to a place beyond the radius of 100 miles from the City of Sheridan, Wyoming, to Sioux Falls, South Dakota." The father now appeals this order.

## DISCUSSION

We employ an abuse of discretion standard in reviewing decisions of the district court. This court has always recognized that the trial court exercises a broad discretion in the execution of its revisory powers in matters involving domestic relations. "[W]e will not interfere with the decision of the district court unless there is a procedural error or unless there is shown to be a clear abuse of discretion." In our determination whether appellant has clearly shown that the district court abused its discretion, we have said countless times "the ultimate issue is whether or not the court could reasonably conclude as it did."

*Gaines v. Doby*, 794 P.2d 566, 570 (Wyo. 1990) (citations omitted). *See also, Marquiss v. Marquiss*, 837 P.2d 25, 34 (Wyo. 1992); *Thompson v. Thompson*, 824 P.2d 557, 559 (Wyo.1992); *Moore v. Moore*, 809 P.2d 261, 265 (Wyo.1991); *Uhls v. Uhls*, 794 P.2d 894, 896 (Wyo.1990); *Goss v. Goss*, 780 P.2d 306, (Wyo.1989). We have also said:

A reviewing court cannot substitute its judgment for that of the trial court, whose judgment must be sustained unless clearly erroneous, manifestly wrong, or totally against the evidence. The appellate court will not set aside the trial court's findings merely because it might have reached a different result.

*Roberts v. Vilos*, 776 P.2d 216, 217 (Wyo. 1989).

In reviewing the district court's order granting the mother approval to relocate from Sheridan, Wyoming to Sioux Falls, South Dakota, we discern two areas for discussion: the relocation and its concomitant effect on visitation and the district court's failure to acknowledge Alex's preference to stay in Sheridan.

### 1. *Relocation*

This court has considered only one previous case concerning the possible relocation of a custodial parent. *Martin v. Martin*, 798 P.2d 321 (Wyo.1990). In that case, at the time of divorce, both parents remained living in the same city and the court ordered joint custody giving each parent six months of physical custody of the children.

*Martin,* 798 P.2d at 321. The district court concluded that should one of the parents relocate, the remaining parent would be awarded custody for nine months. *Martin,* 798 P.2d at 321–22. We noted that the test for child custody is the best interests of the child and found the court's determination of custody upon relocation to be speculative in that regard and, thus, an abuse of discretion. *Martin,* 798 P.2d at 322–23.

This court's test to determine custody is well established. We have said that the "goal to be achieved is a reasonable balance of the rights and affections of each of the parents, with paramount consideration being given to the welfare and needs of the children." *Leitner v. Lonabaugh,* 402 P.2d 713, 720 (Wyo.1965); *See also, Fanning v. Fanning,* 717 P.2d 346, 353 (Wyo.1986); *Bereman v. Bereman,* 645 P.2d 1155 (Wyo. 1982); *Ayling v. Ayling,* 661 P.2d 1054, 1160 (Wyo.1983); *Yates v. Yates,* 702 P.2d 1252, 1256 (Wyo.1985).

We take note of a wide array of standards, tests and presumptions that have been applied in relocation cases in other jurisdictions:

> *Bernick v. Bernick,* 31 Colo.App. 485, 505 P.2d 14, 15–16 (1972): "[I]n the absence of a clear showing to the contrary, decisions of the custodial parent reasonably made in a good faith attempt to fulfill the responsibility imposed by the award of custody should be presumed to have been made in the best interests of the children."
>
> *Arquilla v. Arquilla,* 85 Ill.App.3d 1090, 41 Ill.Dec. 450, 452, 407 N.E.2d 948, 950 (1980): Test is not singly to establish the best interests of the child, but "whether the general quality of life for both *the custodial parent and the child* will be improved by the removal."
>
> *Henry v. Henry,* 119 Mich.App. 319, 326 N.W.2d 497, 499 (1982): Best interests of the child to be decided in earlier custody hearing, test for relocation is the best interests of the new family unit; "[a]rbitrary imposition of the 'best interests of the child' test in all matters concerning children is illogical at best and cruelly insensitive at worst."

> *Lorenz v. Lorenz,* 242 Mont. 62, 788 P.2d 328, 331 (1990): "[A] custodial parent is presumptively entitled to change her own and the child's residence."
>
> *Jafari v. Jafari,* 204 Neb. 622, 284 N.W.2d 554, 555 (1979): "The general rule in cases where a custodial parent wishes to leave the jurisdiction for any legitimate reason is that the minor children will be allowed to accompany the custodial parent if the court finds it to be in the best interests of the children to continue to live with that parent."
>
> *D'Onofrio v. D'Onofrio,* 144 N.J.Super. 200, 365 A.2d 27, 29–30 (1976): After divorce the children belong to a new family unit consisting of the children and the custodial parent and "what is advantageous to that unit as a whole, to each of its members individually and to the way they relate to each other and function together is obviously in the best interests of the children."
>
> *Jaramillo v. Jaramillo,* 113 N.M. 57, 823 P.2d 299, 309 (1991): "[T]he interests of the child take precedent over any conflicting interest of either parent."
>
> *Marriage of Ditto,* 52 Or.App. 609, 628 P.2d 777, 779 (1981): "In many cases, the happiness and well-being of the custodial parent becomes an ingredient of the welfare of the children."
>
> *Matter of Marriage of Meier,* 286 Or. 437, 595 P.2d 474, 479 (1979): Despite competing interests of the parents, "[t]he determination whether to permit or prohibit removal of the child from the state is addressed to the sound discretion of the court, the 'paramount consideration' being the best interests of the *child.*"
>
> *Fritschler v. Fritschler,* 60 Wis.2d 283, 208 N.W.2d 336, 339 (1973): "The parent's responsibility to the child and its interests and the rights of the other parent qualify and limit the right and liberty to move about freely—that is one of the burdens of having custody of minor children."

■ Cases involving relocation of parents are fact sensitive; we would be remiss to attempt to define a bright line test for their determination. Where the issue is

relocation of one of the parties, we must remember that the best interests of the child standard was applied at the time of the initial custody award. Therefore, our review looks more closely at balancing the continued rights of the parties with the best interests of the children as established at the time of divorce. We will consider the attributes and characteristics of the parents and children and how the children have fared under the original custody and visitation arrangement. We will consider also whether the relocating parent's motives for proposing the move are legitimate, sincere, in good faith, and whether reasonable visitation is possible for the remaining parent. *See, Arquilla,* 407 N.E.2d at 950; *Holder v. Polanski,* 111 N.J. 344, 544 A.2d 852, 855 (1988).

Review of the district court's decision is encumbered by the absence of any findings of fact in the order. We must rely on the hearing transcript to uncover any evidence to support the district court's decision. In doing so, we effect a de novo review of the record and must make our own interpretation of the facts to suppose what motivated the court to act in the manner in which it has. Our work would be more exact and methodical if the district court had provided findings of fact to support its conclusions.

From the record it is apparent that the current situation of custody and visitation has worked very well for both the children and their parents. The children have been described as healthy, and well-nurtured and have had the benefit of continuing contact with both their parents. While acknowledging that in Sioux Falls mother "doesn't have a house, we don't know where she's going to school or anything else," the district court judge stated that she had been an "extraordinarily good parent" and that the "Court and Mr. Love can trust that that's going to go on in the future." The district court judge noted that at the time of divorce, mother was deemed by the parties to be the "most appropriate person to be primary custodian" and "[n]othing has happened to change this * * * not even her decision to move." The district court continued stating:

But she has a right to seek something for herself and her future. These are good kids. They've got good parents. * * * They're molded because of the care and love that both of you people have given them. You are caring and loving parents. That is reflected in your children.

The district court did not make comparisons between the children's current schools and the Sioux Falls school system but concluded that the children "will do equally well whether they are in Sheridan or Sioux Falls, or probably if they were anyplace they're going to do equally well." In this context, we agree with a Michigan court which stated:

" 'We live in a transient society. With respect to the best interests of a child, state boundaries are artificial and meaningless; there is no presumption that bringing up a child in Michigan has any advantage (or disadvantage) over Missouri or Georgia, or any other state. To conclude otherwise would be a meaningless generalization. Restrictions upon where a custodial parent may live, in terms of geography, are not realistic. In every state there are good and bad places to bring up a child.' "

*DeGrow v. DeGrow,* 112 Mich.App. 260, 315 N.W.2d 915, 918 (1982) (quoting *Hutchins v. Hutchins,* 84 Mich.App. 236, 269 N.W.2d 539, 540 (1978) (Beasley, J., concurring). This statement surely applies to comparisons between Wyoming and South Dakota as well.

■ The test we will utilize in relocation cases is most similar to that espoused in *Arquilla.* We agree:

It would be incongruous for a court, when presented with a custodial order originally based upon the best interests of the child, to refuse to support the efforts of the custodial parent to maintain and enhance *their* standard of living, albeit in another jurisdiction. So long as the court is satisfied with the motives of the custodial parent in seeking the move and reasonable visitation is available to

the remaining parent, removal should be granted.

*Arquilla,* 407 N.E.2d at 950.

We acknowledge that mother's plans at this time are speculative; she has not enrolled herself or her children in school, purchased a home or identified employment opportunities in Sioux Falls. Her previous employment in Sheridan, however, was not long term, found to be unappealing and in less than three years her alimony support will terminate. Mother has identified what she believes to be a positive solution to these problems: relocation to Sioux Falls.

To this discussion we add the consideration of whether an "established custodial environment continues to exist despite a change in the children's domicile." *De-Grow,* 315 N.W.2d at 917. This situation has been defined as one that

> emphasizes the continuity and strength of an established relationship between a custodian and a child. The custodial environment is the family unit which cannot be destroyed by a simple change in geographic location. The family unit still will be preserved in the new domicile.

*DeGrow,* 315 N.W.2d at 918.

As the district court recognized, despite a change in residence, there is no reason to suggest that mother will not continue to provide a caring, nurturing environment for her children. We agree that Betsy should stay with her mother. This part of the district court's decision is supported by the testimony of Dr. Leugers and mother who identified Betsy's emotional needs in this area.

■ Father also raises the issue of problematic visitation if mother is to move. He stated that his weekend visitation would be "non-existent" because of the distance between the two towns. Father's change in visitation due to mother's relocation is unfortunate, but not an unusual result of divorce. *Nelson v. Card,* 162 Colo. 274, 425 P.2d 276, 278 (1967). We agree that a court

> should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable life

style for the mother and children be forfeited solely to maintain weekly visitation by the father where reasonable alternative visitation is available and where the advantages of the move are substantial.

*D'Onofrio,* 365 A.2d at 30. Mother's motive for wanting to relocate is legitimate, sincere and in good faith. Though the details of the move have not been fleshed out, the district court was convinced that mother's exceptional parenting would continue in another locale. The record does not disclose whether either party contemplated an alternative to the current visitation arrangement. However, more than inconvenience to the noncustodial parent must be shown to defeat the custodial parent's right to relocate. *Cooper v. Cooper,* 99 N.J. 42, 491 A.2d 606, 614 (1984). This court recently upheld a complex and somewhat restrictive visitation schedule for the father of two young children who were in the custody of their mother, living in Las Vegas. In that case we underscored that establishment of visitation schedules is within the sound discretion of the district court. *Rowan v. Rowan,* 786 P.2d 886, 891 (Wyo.1990). Though visitation for father may be more difficult, it is still within the bounds of reason.

We have stated:

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

*Vanasse v. Ramsay,* 847 P.2d 993, 996 (Wyo.1993) (citation omitted).

■ We discern no abuse of discretion by the district court in permitting mother to relocate with the youngest child, Betsy.

2. *Alex's preference to stay in Sheridan*

■ Considering the preferences of children in custody matters, we have said that "the preference of a child of sufficient age and maturity is a factor to be considered by a court in ascertaining what is in the child's

best interests." *Roberts*, 776 P.2d at 218. Though this is one factor to consider, "such preference is not conclusive." *Yates v. Yates*, 702 P.2d 1252, 1255 (Wyo.1985). In the few cases in which we have deliberated this issue, we have provided the following quote which still aptly applies:

> Such we think is the general rule; for, if the happiness and welfare of the infant is to be consulted, nothing could be more potent upon that question than the expression of its preference based upon kindness or unkindness, care or want of care, love and affection or want thereof, and, as to the surrounding conditions, either with one or the other.

*Yates*, 702 P.2d at 1256 (quoting *Tytler v. Tytler*, 15 Wyo. 319, 338, 89 P. 1, 6 (1907)).

> It appears to be the almost universal rule that at least when a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment as to its future welfare, based upon facts and not mere whims, its wishes are one factor which may be considered by the court in determining custody, in doubtful cases in any event, usually not because of any legal right in the child to have its wishes granted, but because the consideration of such wishes will aid the court in making a custodial decree which is for the best interests and welfare of the child.

*Yates*, 702 P.2d at 1256 (quoting Annotation, *Child's Wishes as a Factor in Awarding Custody*, 4 A.L.R.3d 1396, 1402 (1965 & Supp.1992)). *See also, Douglas v. Sheffner*, 79 Wyo. 172, 331 P.2d 840, 844 (1958).

This court has identified several factors to consider in weighing a child's custodial preference:

> [T]he age of the child; the reason for the preference; the relative fitness of the preferred and non-preferred parent; the hostility, if any, of the child to the non-preferred parent; the preference of other siblings; and whether the child's preference has been tainted or influenced by one parent against the other.

*Roberts*, 776 P.2d at 219. A preference which "has a stated basis and is expressed in a plain manner should be accorded great-er weight than one whose basis cannot be described." *Roberts*, 776 P.2d at 218–19. "The older a child becomes, greater weight should be given his preference." *Yates*, 702 P.2d at 1256. The court is to "give more consideration to a fifteen-year old ... than say, the preference of a six-year old child." *Yates*, 702 P.2d at 1256.

The children in *Roberts* were not interviewed by the court but expressed to a guardian ad litem their reasons for wanting to stay with their mother in Washington state: a mall and a paper route. The guardian *thought* he could get the children to say they wanted to be with their mother regardless of where she was living. *Roberts*, 776 P.2d at 219. We stated that this preference was "rather tenuous," "equivocal" and "insubstantial" and found no abuse of discretion by the district court in declining to change custody on that basis. *Roberts*, 776 P.2d at 220.

In *Yates*, where the district court judge had an opportunity to interview the fifteen year old child, we affirmed a change in custody to the child's preferred parent. We noted that the child's life was more stable, resulting in more confidence and self-esteem, when living with her father, the preferred custodian, and that the child had expressed an interest in living with him since the divorce. *Yates*, 702 P.2d at 1255–56.

However, in a case involving children aged ten and thirteen, though they had expressed an interest to a witness who testified at trial of their wishes to stay with their mother, we affirmed the trial court's grant of custody to the father. We stated that the "children's wishes are only one factor for the court to consider when awarding custody." *Curless v. Curless*, 708 P.2d 426, 429 (Wyo.1985) (citing *Douglas*, 331 P.2d at 844, 845 and *Bergstrom v. Bergstrom*, 296 N.W.2d 490, 10 A.L.R.4th 812 (1980)).

Courts have relied on children's preferences in granting custody where they were found to be "bright, communicative, understanding, and mature for their age," and the decision was "well-reasoned" and "not the product of coaching." *Hansen v. Han-*

*sen*, 327 N.W.2d 47, 49 (S.D.1982). We agree that the "welfare of the children * * * is not being served if their wishes are not considered by the trial court." *In re Marriage of Kramer*, 177 Mont. 61, 580 P.2d 439, 444 (1978). *See also, In re Custody of Maycelle D.*, 213 Mont. 225, 691 P.2d 410, 412 (1984). Though the child's preference is but one factor to consider, these wishes should receive "serious consideration." *In re Marriage of Rolfe*, 216 Mont. 39, 699 P.2d 79, 87 (1985).

Alex was not interviewed by the court but his preference was made known through testimony from his mother and Dr. Leugers, the psychologist, who thought Alex capable of making "a reasonable decision in his own best interest." Alex's preference for custody was not related to a parental preference, but to a geographic preference. Given a choice, Alex would choose to stay in Sheridan to finish high school with his friends. Because father would continue to reside there, custody of Alex would be with his father.

There was no dispute that father would not be a fit and proper person to have custody of Alex. Mother, in essence, resigned herself to the fact that Alex would stay with father when she stated, "if I am granted permission to leave, I would be sad because I love him and we're very close, but I think that he's old enough to make his decision, and I would respect his wishes." Even the district court seemed to anticipate that Alex would stay in Sheridan when the judge stated:

I imagine if Alex comes here to stay, there will be problems with his mother having the visitation ...

We note:

Judicial discretion is necessarily broad—but it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.

*Vanasse*, 847 P.2d at 996 (citations omitted). The district court, though apparently contemplating Alex's preference, failed in its final order to acknowledge and give weight to his wishes. We find this to be an abuse of discretion and reverse the decision as it pertains to Alex.

## DISPOSITION

We affirm the district court's order granting mother's request to relocate to Sioux Falls, South Dakota, with the parties' youngest child, Betsy, and reverse the court's decision as it concerns the elder child, Alex. We remand for a determination of the parties' respective visitation rights in light of this opinion.

GOLDEN, J., delivered the opinion of the court.

THOMAS, J., filed a dissenting opinion in which TAYLOR, J., joined.

THOMAS, Justice, concurring in part and dissenting in part, with whom TAYLOR, Justice, joins.

I must dissent from the reversal of this case with respect to the custody of the son, Alex. I agree with the ruling of the majority affirming the decision of the trial court as to the other issues. I cannot agree that the trial court committed any abuse of discretion in this case. Instead, I perceive the case as one in which the trial court manifested the epitome of discretion in not changing custody of Alex.

Stripped of rhetoric and posturing, the case amounts to this:

A mother who was awarded primary custody of two minor children in a divorce proceeding desired to move beyond a radius of 100 miles from the residence of the parties at the time of the divorce. By the terms of the decree, such a move required consent of the parties or an order of the court. The mother sought such an order, and the father sought a change of primary custody of the children to him if the court granted permission to the mother to move. The court granted permission for the move without any change in custody. The minor son of the parties, approximately 15 years of age, expressed a desire to stay in the place of residence and finish high school

there. The mother agreed that this could occur although she expressed regret at the separation from her son.

The majority recognizes that the preference of the minor child is a factor to be considered by the court, but the preference is not conclusive, citing *Yates v. Yates*, 702 P.2d 1252 (Wyo.1985). The *ratio decidendi* of the majority opinion, however, is that in this instance the preference of the minor son is conclusive. This effectively removes any discretion from the trial court and, at least, the majority should refrain from casting any aspersions upon the exercise of discretion by the trial court. Under the rule of this case, the trial court had no discretion.

I am persuaded that the majority has adopted a koan inappropriate to the resolution of this case. The options of the trial court were:

1. To maintain the status quo and rely upon the good faith of the mother to follow the desires of the minor son.

2. To change custody from the mother to the father.

In choosing the former option, the court recognized the desires of the minor son and, apparently relying upon the good faith of the mother, no change in custody was ordered. The trial court assumed a calculated risk that no further judicial proceedings would be required to address custody of Alex. If the second option is adopted, as the majority determines, then a new proceeding will be required if the son changes his mind and wishes to live with his mother. Under the option chosen by the trial court, if the mother fails to act in good faith, a new proceeding also will be required to change custody to the father.

I am persuaded that, in choosing to pursue the first option, the trial court properly exercised its discretion under any or all of the definitions or standards for the exercise of discretion previously articulated by this court. The choice of the trial court is eminently reasonable, offering the potential for the minor son to reside with either the father or the mother, as the son chooses, without recourse to further judicial proceedings. I assume the son will continue in his choice to stay and finish high school but, if he changes his mind for any reason, then a new proceeding will be required to change custody back to his mother. The trial court could reasonably conclude as it did; its judgment was not clearly erroneous, manifestly wrong, or totally against the evidence; it exercised a sound judgment with regard to what was right under the circumstances and without doing so arbitrarily or capriciously.

Unless the true rationale for the majority decision is that the preference of the minor child is to control whenever it is expressed, the majority has usurped the discretion we historically have held to be the prerogative of the trial court. If the expressed desire of the minor child is not controlling, then it is the majority of this court that has acted in an arbitrary and capricious mode. The result is not good appellate jurisprudence.

I would affirm the judgment of the trial court in all respects.