No. 88-579

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

IN RE THE MARRIAGE OF
JEREMY GERSOVITZ,

        Petitioner and Appellant,

  and

CATHERINE ANN SIEGNER,

        Respondent and Respondent.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Carol A. Mitchell, Missoula, Montana
        Joan Uda, Helena, Montana

    For Respondent:

        Martha E. McClain, Missoula, Montana

    For Amicus Curiae:

        Bruce B. Barrett, Montana Association of Jewish
        Communities, Missoula, Montana

---

Submitted on Briefs: June 16, 1989

Decided: August 25, 1989

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Fourth Judicial District, in and for the County of Missoula, the Honorable John S. Henson presiding. Judge Henson issued findings of fact and conclusions of law and order in this marriage dissolution action. Appellant Jeremy Gersovitz appeals from the custody order concerning the parties' minor child. We affirm.

Three issues are presented by the appellant, Jeremy Gersovitz, which we will condense into two issues as stated by the respondent, Catherine Ann Siegner.

1. Did the District Court abuse its discretion in ordering a residential plan which placed the child with respondent wife, after the child reaches a school age?

2. Did the District Court abuse its discretion in its determination that neither party should have the exclusive right to determine the child's religious education?

The parties met in Washington, D.C. while attending school to earn graduate degrees. Respondent (hereinafter referred to as Catherine) received a bachelor's and master's degree in journalism. The appellant (hereinafter referred to as Jeremy) holds a bachelor's degree in political science and a master's degree in journalism. After receiving their degrees, the parties found work in Missoula, Montana in January of 1986.

The parties were married on February 14, 1986. Their son, Alexander Samuel Gersovitz (hereinafter referred to as Alex) was born on August 1, 1986. Jeremy and Catherine separated in December, 1987. At the time of their separation, Catherine moved out of the family home to a residence within several blocks of Jeremy and the parties

2

worked out an amiable joint custody arrangement. Shortly after Catherine moved, Jeremy filed a petition for the dissolution of the marriage.

Between the time of the filing for dissolution and the trial, the parties shared joint custody of Alex. The central issue here is whether Alex should reside with Catherine or Jeremy after he reaches school age.

Each party made several recommendations to the court prior to and during the trial regarding the residence and care of Alex. After hearing the evidence, the court structured a plan which would enable each parent to have physical custody of Alex during certain periods of the year. Alex was approximately three years of age when this plan was established. Jeremy objects to that portion of the plan which places Alex in the custody of Catherine after he begins school. Section 40-4-212, MCA, sets forth the factors to be considered when determining the best interest of the child. The court noted in its findings that both parents were loving, concerned and capable parents. Both sought joint custody and each requested to be the primary custodian commencing with Alex's school years. However, the court concluded that the child must reside primarily with one parent during the time he attends school so his education will not be interrupted by multiple custodial transfers. Further, the court concluded that it was in Alex's best interest that he spend time with both parents during the summer.

The court, in finding no. 31 noted:

> It is in the best interest of the minor child to reside with Respondent [Catherine] during the school year because of her parenting abilities, her lack of animosity towards Petitioner [Jeremy] and her greater range of interests. It is less likely that

3

> Respondent will interfere with
> Petitioner's relationship with Alex,
> including providing access to the child,
> than Petitioner is likely to interfere
> with Respondent's relationship with the
> child, including providing access to
> him. Respondent appears to be more
> capable of allowing Alex to develop his
> own identity. Further, her ability to
> recognize and address the needs of the
> child to have a strong relationship with
> the other parent is not likely to be
> hampered by anger towards that parent.
> The same cannot be said of Petitioner.

Included in its order, the court addressed child support, medical insurance, summer vacations, and a residential plan for Alex before he starts school. It also provided for the custody of Alex and incurred travel costs should one parent move more than 200 miles from the other, or in excess of 200 miles from Missoula. Jeremy's second issue, which has been supported by an amicus brief by the Montana Association of Jewish Communities, relates to the District Court's order no. 9 which provides as follows:

> Neither parent shall have the
> exclusive right to determine the child's
> religious education and affiliation.
> This determination is consistent with
> the philosophy underlying joint custody
> and also with the reality of the child's
> heritage.

Jeremy argues that from the time of his birth, Alex has been raised Jewish, with the support and cooperation of both parents. He argues that being Jewish is not merely a religion, it is a way of life. Alex's full name, Alexander Samuel Gersovitz, is a Jewish name and he will be recognized by society as a Jew. Jeremy further states that Alex has been circumcised and has regularly and routinely been made a

4

part of the Missoula Jewish community celebration of their faith.

Jeremy argues that the District Court abused its discretion in concluding, for all practical purposes, that once Alex reaches school age, he should be raised in no religion, rather than the religion in which he has been raised since his birth. Jermey claims that because he has been separated from Alex, he will not be raised with sufficient knowledge of Judaism. This, he argues, will make it difficult, if not impossible, for Alex to live in the Jewish tradition, because a Jewish boy achieves religious responsibility at the age of thirteen when he celebrates his barmitzvah, becomes an adult and chooses his religion, Judaism. It is further argued that it is necessary for a school age child to receive the religious training necessary to prepare him for his barmitzvah. It is claimed that the District Court's order which places Alex in his non-Jewish mother's care during the school year prevents Jeremy from raising Alex in a strong Jewish tradition.

After carefully studying the transcript, briefs and District Court file, we cannot say that the court abused its discretion in this custody matter. The District Court's order relating to Alex's religion was correct because it reflects Alex's best interests and is constitutionally sound.

This case presents an issue of first impression in Montana. The First Amendment guarantees religious liberty, and the right of parents to direct the religious upbringing of their children. Wisconsin v. Yoder (1972), 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15. There is a common feature in the cases cited by the appellant and amicus. That is, courts will not debate the merits of different religions or show preference to any religious faith. However, courts will examine religious practices which interfere with the child's

5

general welfare. Religion as a Factor in Child Custody and Visitation Cases, 22 A.L.R.4th 971. A question of religious education must be strictly limited to the context of the best interests of the minor child.

The appellant cites In re the Marriage of Simms, a 1987 Colorado district court case, as support for an option which would grant custody of a child to one parent "for the purposes of determining religious training." However, Simms, a district court case rather than a Colorado Supreme Court case, is not persuasive. Its facts differ from those of this case, which in our opinion, makes Simms inapplicable. In Simms, the mother converted to Judaism before the children were born. The children were raised in the Jewish faith prior to the divorce of the parents. After the parties separated, the mother reverted to her original faith of Catholicism and began taking the children to church. The Colorado district court thought it would be best if the parents could agree jointly on the issue of religious training for the children, but further found that the parents were not able to do so and after hearing considerable expert testimony, found that it was most appropriate for one parent or the other to determine the religious training of the children. That is not the situation here.

The facts of this case did not require the District Court to appoint one parent as the religious custodian of Alex. However, under § 40-4-218, MCA, the custodial parent may determine the child's religious training. We find that under the facts of this case, an award of custody for the purpose of religious education should not dominate other elements which comprise the best interests of this particular child.

This Court has previously held in In re Marriage of Cole (Mont. 1986), 729 P.2d 1276, 43 St.Rep. 2136; and In re

6

the Custody and Support of B.T.S. (1986), 219 Mont. 391, 712 P.2d 1298, that the findings and conclusions of a district court regarding the best interests of a child are presumptively correct and will not be overturned unless there is a clear preponderance of evidence against them. Here, the District Court's determination as to the best interests of the minor child was supported by substantial credible evidence.

The judgment of the District Court is affirmed.

Justice

We concur:

Justices