No. 95-068

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

MICHAEL W. WANG,

     Petitioner and Respondent,

and

LAURIE APRIL WANG,

     Respondent and Appellant.

**FILED**

JUN 01 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kevin T. Sweeney, Sweeney & Healow, Billings,
Montana

    For Respondent:

        Christopher P. Thimsen, Attorney at Law,
Billings, Montana

Submitted on Briefs:  April 20, 1995

Decided:  June 1, 1995

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Laurie April Wang (Laurie) appeals the decision of the Thirteenth Judicial District Court, Yellowstone County, appointing Michael W. Wang (Michael) primary residential custodian of their son Jesse. We affirm.

We find the following issues dispositive:

1. Did the District Court err in failing to address Michael's religious beliefs and the effect those beliefs would have on Jesse when it determined what was in Jesse's best interest?

2. Did the District Court err in determining that Laurie had previously denied Michael's access to visitation?

Michael and Laurie were married in 1989, and had one child, Jesse, who was born in 1990. In 1993 the couple separated and Michael filed for divorce. While Michael and Laurie agreed that joint custody would be in Jesse's best interest, they disagreed as to who should be the primary residential custodian. Both requested custody of Jesse during the school year, with the other having Jesse during the summers and alternating holidays.

Social workers conducted home evaluations of Michael and Laurie and concluded that both were suitable to be primary caretakers of Jesse. The District Court held a hearing in which Michael and Laurie presented evidence and arguments to support their respective positions. Laurie presented testimony that Michael was a member of the Cornerstone Community Church. She argued that the practices of this church, including the performance

2

of exorcisms and the belief that a wife should be subservient to her husband, would be harmful to Jesse.

Following the hearing, the District Court issued its findings of fact, conclusions of law and order. The court granted Michael physical custody of Jesse during the school year. Laurie was granted physical custody of Jesse during the summer and alternating holidays. Laurie appeals the decision of the District Court.

Issue 1

Did the District Court err in failing to address Michael's religious beliefs and the effect those beliefs would have on Jesse when it determined what was in Jesse's best interest?

Laurie argues that the District Court should have made specific findings in relationship to Michael's involvement with the Cornerstone Community Church and how this involvement affected the best interest of Jesse. We disagree.

In Lorenz v. Lorenz (1990), 242 Mont. 62, 788 P.2d 328, we stated,

> a district court need not make specific findings on each statutory factor in determining best interest of children under § 40-4-212, MCA, but need only express the 'essential and determining' facts upon which it rests its conclusion.

Lorenz, 788 P.2d at 332 (citing Cameron v. Cameron (1982), 197 Mont. 226, 230-31, 641 P.2d 1057, 1060).

It is true that the District Court did not make specific findings addressing Laurie's allegations concerning Michael's religious beliefs. However, the court likewise did not make

specific findings concerning Michael's allegations that reflected poorly on Laurie's parenting abilities.

The court set forth the factors to be considered under § 40-4-212, MCA. Then, rather than making specific findings concerning each and every allegation raised by Michael and Laurie, the court summarized its observations of the evidence presented as follows:

> There is no adequate evidence of physical, emotional, sexual, drug or alcohol abuse against either party. Both parties have provided care for Jesse and appear to be fit and proper custodians under the statutory joint custody provisions.
>
> . . . .
>
> Jesse has been cared for by both parents at different times. The Father has been a primary caretaker of Jesse from the time of birth as well as during portions of these proceedings and no adequate challenge to his ability to do so has been made by the Mother or any other witness at the hearing.

The District Court heard Laurie's allegations concerning Michael's religious practices. Applying the statutory factors, the court found that there were no adequate challenges to Michael's ability to care for Jesse. The court set forth the essential and determining facts upon which it based its conclusion. It is not bound to make a specific finding regarding every allegation by a party.

In Frazier v. Frazier (1984), 208 Mont. 150, 676 P.2d 217, the district court failed to make specific findings as to why it accepted one party's property valuation rather than that of the other party. This Court stated:

> It is not the lack of specific findings which constitutes reversible error, but the lack of substantial evidence to support the judgment. We look both to the District

4

Court's express reasoning and the evidence in the record to determine whether ample evidence exists.

Frazier, 676 P.2d at 219-20.

A review of the entire record, not merely Laurie's allegations concerning Michael's religious beliefs, reveals that the District Court's findings were supported by substantial credible evidence. While both parties presented testimony that reflected negatively on the other's parenting abilities, independent home evaluations found both Laurie and Michael to be suitable parents.

Sarah Seiler, the court-appointed social worker, performed a home evaluation of Michael. Seiler questioned Ken McCallum, the pastor of the Cornerstone Community Church. Seiler also made several home visits and observed Michael's interaction with Jesse. Following her evaluation, she determined that there were no "bizarre activities going on" at the Cornerstone Community Church but rather it was merely a fundamentalist church. Seiler concluded that Michael was a suitable residential custodian for Jesse.

After a thorough review of the record, we conclude that the court did not err in its application of § 40-4-212, MCA, and that there is substantial credible evidence to support its findings.

Issue 2

Did the District Court err in determining that Laurie had previously denied Michael's access to visitation?

In addition to the factors set out in § 40-4-212, MCA, a district court should consider which parent is more likely to allow frequent and continuing visitation when deciding custody matters.

5

In re the Marriage of Converse (1992), 252 Mont. 67, 826 P.2d 937.

The District Court stated, in its findings of fact,

> [t]he Father also shows a greater ability to cooperate in his parental role, particularly as it relates to his ability to allow Jesse frequent and continuing contact with his Mother. The Mother's previous demands upon Father regarding visitation has had the effect of denying visitation to Father and does not speak to her ability to cooperate as primary custodian.

The evidence presented at trial supports the court's finding.

During cross-examination of Laurie, the following exchange took place regarding restrictions place on Michael's visitation:

> Q. Another restriction that you imposed is that he be away from work and spend time with Jesse if he was to have visitation?
>
> A. I did. I thought if he was going to spend time with him, that that would be best for Jesse, but I didn't want to be unreasonable.
>
> Q. You were working while you had Jesse?
>
> A. Yes.
>
> Q. But imposed a condition of visitation that he not work; isn't that right?
>
> A. I guess I probably did. Maybe that wasn't the best idea in the world. That is what I did, but the reason I thought that, he had only a month with him. I don't know that I would have been so mean to hold him to it or anything like that.

The record evidences other restrictions imposed by Laurie on Michael's visitation rights, including that he have nothing to do with the Cornerstone Community Church.

We conclude that there was substantial credible evidence to support the District Court's finding that Laurie placed restric-

tions on Michael's visitation rights during the separation. We affirm the decision of the District Court.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

Justice W. William Leaphart, dissenting.

I dissent. I would reverse and remand for specific findings on Laurie's allegations that Michael's religious beliefs adversely affect Laurie's relationship with Jesse. The Court cites Lorenz v. Lorenz (1990), 242 Mont. 62, 788 P.2d 328, for the proposition that a district court need not make specific findings on each statutory factor in determining best interest of children under § 40-4-212, MCA, but need only address the essential and determining facts upon which it rests its conclusion. I do not disagree with that proposition. However, I do believe that the district court must address the allegations which are at the heart of the dispute. In the case at bar, Laurie's main contention is that if Michael exposes Jesse to the teachings of the Cornerstone Community Church, that exposure will adversely impact on Jesse's relationship with his mother. Michael, on the other hand, contends that Laurie should not be designated the residential parent because she, in the past, restricted Michael's access to visitation. The District Court chose to specifically make findings as to Michael's contention but not to address Laurie's contentions about religious upbringing.

It appears from the transcript that the District Court, although listening to Laurie's testimony and proof on the question of religious teachings, took the position that religion is beyond the pale of the court's scrutiny. I disagree. Considerable psychological and/or physical harm can be inflicted in the name of religion. When sufficient evidence is produced to raise questions

8

as to whether particular religious practices are adversely affecting a child's relationship with a parent, it is incumbent upon the district court to address those issues and make finding as to the allegations.

Montana law provides that the custodial parent may determine the child's religious training "unless the court after hearing finds, upon motion by the noncustodial parent, that in the absence of a specific limitation of the custodian's authority, the child's physical health would be endangered or his emotional development significantly impaired." Section 40-4-218(1), MCA. This Court has recognized the right of parents to direct the religious upbringing of their children. In re Marriage of Gersovitz (1989), 238 Mont. 506, 509, 779 P.2d 883, 885; citing Wisconsin v. Yoder (1972), 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15. However, the Court noted that, "courts will examine religious practices which interfere with the child's general welfare. [Citing authority.] A question of religious education must be strictly limited to the context of the best interests of the minor child." *Marriage of Gersovitz*, 779 P.2d at 885. In *Marriage of Gersovitz*, the child's father was a practicing Jew while the mother was non-Jewish. The district court awarded residential custody to the mother and, in the interests of the philosophy of joint custody, provided that neither parent should have the exclusive right to determine the child's religious education and affiliation. The father appealed contending that the child should be raised in the Jewish tradition and that custody with the non-Jewish mother prevents the

9

development of that tradition. This Court rejected that argument and found that the district court's order relating to religion was in the child's best interests. The Court concluded that an award of custody to the father for the purposes of religious education should not dominate other elements which comprise the best interests of the child. *Marriage of Gersovitz*, 779 P.2d at 885.

The Supreme Court of North Dakota recently addressed a similar situation in Leppert v. Leppert (N.D. 1994), 519 N.W.2d 287, in which the mother belonged to a small religious sect run by her father, Winrod. Her husband, (the father of the children) was once a follower of Winrod but had ceased following his teachings. The district court had awarded custody of two of the minor children to the father and custody of the other three children to the mother. The father appealed the custody award of the three children to the mother. The North Dakota Supreme Court noted that there was testimony at trial supporting the father's contention that the mother was poisoning the children's relationship with the father and his family. The Supreme Court concluded that the district court erred in failing to consider the harmful impact of the mother's beliefs when determining the best interests of the children. Holding that religious conduct which may harm the child, physically or emotionally, is subject to judicial scrutiny, the North Dakota court said:

> Although we agree with the district court that Quinta [the mother] must not be discounted from consideration as a custodial parent simply because of her religious *beliefs*, this does not mean her religiously motivated *actions*, which are emotionally and physically harmful to the children, should be ignored when determining the

10

children's best interests. Such a holding would immunize from consideration all religiously motivated acts, no matter what their impact on the children. Carl E. Schneider, *Religion and Child Custody*, 25 U.Mich. J.L. Ref. 879, 888 (1992).

*Leppert*, 519 N.W.2d at 290.

The North Dakota court went on to point out that, consideration of the possible harmful impact of a parent's religion when determining custody is not meant to punish the parent.

> The only reason for any consideration of religious beliefs when determining the best interests of the child is to take into account any harmful impact the belief system may have on the child. The best interests factors enumerated in § 14-09-06.2 are secular in nature, and the court's functions do not include determining the road to salvation. Although secular courts have no place deciding one religion is better than another, Schneider, *supra*, at 884, they do have the duty of objectively determining whether a belief system's secular effects are likely to cause physical or emotional harm to children.

*Leppert*, 519 N.W.2d at 291.

In *Leppert*, the district court had ignored these factors because they were religiously motivated. The North Dakota Supreme Court reversed: "Applying the correct standard for considering the adverse impact that Quinta's beliefs are likely to have on the children, it is in the best interests of all five children that their physical custody be with Joel." *Leppert*, 519 N.W.2d at 291.

In the same vein, the Colorado Supreme Court has held: "While courts must remain sensitive to first amendment concerns, a court in a custody proceeding must not blind itself to evidence of religious beliefs or practices of a party seeking custody which may impair or endanger the child's welfare." In re Marriage of Short (Colo. 1985), 698 P.2d 1310, 1313.

11

Religious upbringing is clearly not beyond the scope of judicial scrutiny. Rather, it is a matter which the courts will (and should) examine to determine whether the religious practices interfere with the child's welfare or significantly impair his/her emotional development.

Other than what I have read in this record, I have no knowledge of the beliefs and teachings of the Cornerstone Community Church. Furthermore, it is not my function to debate the merits of different religions or show preference to any particular faith. However, there is testimony in the record indicating that the church teaches that women are not allowed any authority, and that men must be allowed to make all the decisions. One witness, a ten-year member of the church, had to undergo an exorcism to rid herself of the "evil unsubmissive spirits"--the spirits which caused her to speak up for herself and to exercise authority rather than completely submit to her husband. Further, there is testimony that the church believed that Laurie Wang was possessed by demons and therefore subjected her to an exorcising ritual. The District Court did not determine whether, in its judgment, there was any truth or significance to this testimony. The court did, however, enter Findings of Fact and Conclusions of Law which provide:

> Neither [parent] shall either directly or indirectly cause Jesse to loose respect for or alienate his affection to either parent. The parents shall cast each other in the most favorable light before the child and shall recognize the great importance of the parents/child relationship. Additionally, both parents shall:
>
> . . . .
>
> c.    Encourage the free and natural development of love

12

and respect for both parents and do nothing which may estrange Jesse from the other parent, or injure the opinion of the child to the other parent; . . . .

If there is any validity to Laurie's allegations that Michael is taking Jesse to a church which teaches Jesse that his mother is possessed by demons and that she, in contrast to the male of the species, is a lesser, subservient human being, then there is a very serious question as to whether those teachings are in direct contravention of the court's directive that both parents will foster love and respect for the other parent and will do nothing which will estrange Jesse from the other parent or injure the child's opinion of the other parent.

Whether under the guise of religion or not, any indoctrination of a minor child which undermines a child's respect for his/her mother because she is a woman, subverts the child's interaction and interrelationship with that parent, contrary to § 40-4-212(1)(c), MCA, and the best interests of the child.

In response to Michael's allegations about Laurie's uncooperativeness, the District Court did find that Michael shows a greater ability to cooperate in his parental role "particularly as it relates to his ability to allow Jesse frequent and continuing contact with his Mother." Having addressed the issue of frequency of Jesse's contacts with his mother, it is incongruous to then avoid the more substantive issue of whether Jesse, despite frequent contact with his mother, is being taught to disrespect and fear his mother as a subservient and demon-possessed person. Given that the trial court required the parties to foster the child's love and

13

respect for the other parent, the court should have made specific findings as to whether the religious upbringing at the Cornerstone Community Church would be consistent with that directive.

I would reverse and remand for specific findings of fact on the question of what impact, if any, the religious training has on Jesse's relationship with his mother.

_W. William Barnhart_
Justice