95219

# IN THE SUPREME COURT OF THE STATE OF MONTANA

Case Number 95-219

IN RE THE MARRIAGE OF:

PEGGY C. G. SCHAPLOW,
n/k/a PEGGY C. GANDER,

      Plaintiff and Appellant,

   v.

TERRY SCHAPLOW,

      Respondent and Respondent.

FILED

NOV 06 1995

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

## APPELLANT'S BRIEF

### On Appeal from the District Court of the Eighteenth Judicial District of the State of Montana In and for the County of Gallatin

**MARCELLE C. QUIST**
**KENDRA K. ANDERSON**
Quist, Bowen & Anderson
1807 West Dickerson
Suite D
Bozeman, Montana 59715

**EDMUND P. SEDIVY**
Sedivy, Bennett & White, P.C.
P.O. Box 1168
Bozeman, Montana 59771-1168

STATE LAW LIBRARY

NOV 07 1995

OF MONTANA

**ATTORNEYS FOR PETITIONER**
**AND APPELLANT**

**ATTORNEY FOR RESPONDENT**
**AND RESPONDENT**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    THE DISTRICT COURT ERRED BY MODIFYING
      CUSTODY OF THE PARTIES' CHILDREN WHEN
      THERE WAS NO MOTION FOR MODIFICATION
      BEFORE THE COURT . . . . . . . . . . . . . . . . . . 5

II.   THE DISTRICT COURT ERRED BY APPLYING
      THE "BEST INTERESTS" TEST WITHOUT
      MAKING THE REQUISITE JURISDICTIONAL
      FINDINGS SET FORTH AT MONT. CODE
      ANN. § 40-4-219 (1993) . . . . . . . . . . . . . . . 7

III.  THE DISTRICT COURT ERRED BY MODIFYING
      THE FINAL DECREE WHERE THE STATUTORY
      CRITERIA SET FORTH AT MONT. CODE
      ANN. § 40-4-219 (1993) WERE NOT MET . . . . . . . . 13

      A.    There was no change in
            circumstance subsequent to
            the entry of the prior decree . . . . . . . . 14

      B.    There was no danger to the
            children's physical, mental or
            emotional well-being . . . . . . . . . . . . . 15

      C.    The harm to the children
            resulting from the change
            in environment outweighs
            the advantages . . . . . . . . . . . . . . . . 16

      D.    The modification is not in
            the children's best interests . . . . . . . . 16

IV.   THE DISTRICT COURT ERRED BY MODIFYING
      THE FINAL DECREE BECAUSE TERRY FILED
      NO AFFIDAVIT IN SUPPORT OF MODIFICATION,
      AS REQUIRED BY MONT. CODE ANN.
      § 40-4-220 (1993) . . . . . . . . . . . . . . . . . 20

i

Page

V.    THE DISTRICT COURT ERRED BY ORDERING
      THE CHILDREN TO ATTEND THE CHURCH OF
      FATHER'S CHOICE WHILE THEY WERE IN
      MOTHER'S CUSTODIAL CARE IN VIOLATION
      OF HER FIRST AMENDMENT RELIGIOUS RIGHTS
      AND MONT. CODE ANN. § 40-4-218 (1993)   . . . . . . . . 22

CONCLUSION   . . . . . . . . . . . . . . . . . . . . . . 27

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . 27

CERTIFICATE OF SERVICE   . . . . . . . . . . . . . . . . . 28

APPENDIX   . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

CASES                                                                    Page

Angel v. Angel, 140 N.E.2d 86 (Ohio C.P. 1956) . . . . . . 25

In re the Custody of C.S.F., 232 Mont. 204,
755 P.2d 578 (1988) . . . . . . . . . . . . . . . . . . . . 5,6

In re the Marriage of Allison, ___ Mont. ___,
887 P.2d 1217 (1994) . . . . . . . . . . . . . . . . . 10,11,21

In re the Marriage of Alpert, 258 Mont. 344,
852 P.2d 669 (1993) . . . . . . . . . . . . . . . . . . . . 8,9

In re the Matter of B.T., 223 Mont. 287,
725 P.2d 230 (1986) . . . . . . . . . . . . . . . . . . . . 11

In re the Marriage of Gahm, 222 Mont. 300,
722 P.2d 1138 (1986) . . . . . . . . . . . . . . . . . . . 10

In re the Marriage of Gersovitz, 238 Mont. 506,
779 P.2d 883 (1989) . . . . . . . . . . . . . . . . . 22,23

In re the Marriage of Hoodenpyle, 241 Mont. 345,
787 P.2d 326 (1990) . . . . . . . . . . . . . . . . . . . . 8

In re the Marriage of Johnson, 266 Mont. 158,
879 P.2d 689 (1994) . . . . . . . . . . . . . . 9,10,11,12,13

In re the Marriage of Paradis, 213 Mont. 177,
689 P.2d 1263 (1984) . . . . . . . . . . . . . . . . . . . 10

Khalsa v. Khalsa, 751 P.2d 715,
(N.M. Ct. App. 1988) . . . . . . . . . . . . . . . . . . . 26

Munoz v. Munoz, 79 Wash.2d 810,
489 P.2d 1133 (1971) . . . . . . . . . . . . . . . . . . . 24

OTHER AUTHORITIES

Montana Code Annotated § 40-4-212 (1993) . . . . . . . 2,8-11

Montana Code Annotated § 40-4-218 (1993) . . . . . . . 22,27

Montana Code Annotated § 40-4-219 (1993) . . . 1,2,7-16,27

Montana Code Annotated § 40-4-220 (1993) . . 1,20,21,22,27

## STATEMENT OF THE ISSUES

The issues for consideration on appeal is whether the district court erred by substantially changing the primary residence of the parties' children, thereby modifying the Final Decree, where there was no motion for modification before the court, no finding of the statutory criteria set forth at Mont. Code Ann. § 40-4-219 (1993) and no affidavit establishing the statutory requirements set forth at Mont. Code Ann. § 40-4-220 (1993). Also, Plaintiff/Appellant appeals the district court order requiring her to assure the children attend the religion of his choice.

## STATEMENT OF THE CASE

The Eighteenth Judicial District Court, Gallatin County ("district court"), heard Petitioner/Appellant's ("Peggy") motions for "Final Determination of Visitation Rights and Contempt" on October 20 and 21, 1994. Peggy had been the children's primary custodian since the dissolution of the parties' marriage. At that time, the children were residing Sunday morning through Thursday night with their mother and Thursday night through Sunday morning with their father. No motion for modification was before the district court at the October hearing, nor had Respondent/Respondent ("Terry") filed an affidavit alleging facts which would warrant modification. The district court issued its Memorandum, Opinion and Order [hereinafter "December Order"] on December

1

16, 1994. The December Order removed Peggy as the children's primary custodian and provided that the school-age children would spend equal time with each parent, switching on a weekly basis. The December Order substantially changed the custodial arrangements of the parties' children and, therefore, the district court should have made a finding that the jurisdictional prerequisites set forth at Mont. Code Ann § 40-4-219 (1993) had been met. Instead, the district court erroneously proceeded directly to the "best interests" test set forth at Mont. Code Ann. § 40-4-212 (1993).

In a prior proceedins and in the December Order, the district court ordered Peggy to assure the children attend Terry's church over the objection fo Peggy.

## STATEMENT OF FACTS

1. The parties were married on June 18, 1977, in Bozeman, Montana (Findings of Fact, Conclusions of Law and Final Decree of Dissolution of Marriage [hereinafter "Final Decree"], page 1, paragraph 3).

2. Two children were born of the parties' marriage, Jesse B. Schaplow, born July 15, 1981; and Michael J. Schaplow, born May 29, 1984 (Final Decree at 2, para. 4).

3. The parties' marriage was dissolved by order of the Montana Eighteenth Judicial District Court, Gallatin County, dated May 6, 1991, the Honorable Thomas A. Olson,

2

District Judge (Final Decree at 4).

4. The parties entered into a Separation, Custody and Property Settlement Agreement [hereinafter "Agreement"] on May 6 1991, which was incorporated by reference into the Final Decree (Final Decree at 2, para. 10; Agreement, page 2, paragraph 3).

5. The Final Decree provided for joint custody of the parties' two minor children and designated Peggy as the primary residential parent (Final Decree at 3; Agreement at 7, para. 2).

6. The parties have utilized the services of numerous mediators since the dissolution of their marriage, in several unsuccessful attempts to reach a mutually acceptable custody and visitation schedule, including Dr. Charles Kelly (Agreement at 7); Dr. Marvin Backer (Agreement at 7); Guardian ad Litem, Eleanor N. Truitt; Dr. Traynham; Retired District Judge Joseph B. Gary; and Retired District Judge Jack Levitt. (See Respondent's Motion for Determination of Summer Custody Schedule and Request for Expedited Telephonic Hearing, dated June 8, 1995).

7. The parties changed the visitation schedule set forth in the Final Decree in December of 1992, to provide that Terry would have the children from Thursday evening through Sunday morning; however, Peggy remained as the children's primary residential parent (Agreement at 7).

8. The visitation schedule was modified again, after

3

a telephone hearing on November 26, 1993, to provide for the children's participation in two five-week ski programs and for their attendance in Sunday School during the 1994 ski season (Order, dated November 26, 1993 [hereinafter "November Order," page 2, lines 22-28).

9. On April 4, 1994, after assignment by the district court as a meditor, Judge Levitt recommended that the parties implement a weekly visitation schedule and remove the primary residential parent designation (Dec. Order at 3, ll. 1-6).

10. Both parties objected to the visitation schedule recommended by Judge Levitt and, pursuant to another telephone hearing on August 9, 1994, the parties reverted to the visitation schedule set forth in the court's November Order wherein Peggy remained designated as the children's primary residential parent.

11. In this November Order, the district court ordered Peggy to assure the children attend Terry's church (Nov. Order).

12. Peggy filed Motions for Final Determination of Visitation Rights and Contempt and both were heard by the district court on October 20 and 21, 1995. The district court issued its Order on December 16, 1995, and it is from that December Order that Peggy now appeals.

4

# ARGUMENT

## I.

## THE DISTRICT COURT ERRED BY MODIFYING

## CUSTODY OF THE PARTIES' CHILDREN WHEN THERE

## WAS NO MOTION FOR MODIFICATION BEFORE THE COURT.

The long-standing rule that a court does not have jurisdiction to rule on issues outside the pleadings properly before it applies to domestic cases. Because there was no motion for modification before the district court, it did not have jurisdiction to modify the decree. See, i.e, In re the Custody of C.S.F., 232 Mont. 204, 755 P.2d 578 (1988). The only question properly before the district court in this case was clarification of the visitation arrangement for the parties' children. (See Dec. Order at 1, para. 1.) In C.S.F., supra, the child's father moved the court for a determination of the number of days of visitation he was allowed to deem accumulated as a result of the mother's refusal of visitation on several occasions. C.S.F., 232 Mont. at 205, 755 P.2d at 579. After a hearing on the father's motion, the court issued its order specifying the number of days he was entitled to deem accumulated and further ordering the parties to provide one another and the court with copies of their work schedules and notice of, among other things, their intent to exercise visitation. The Montana Supreme Court held that the notice provision of the order was void, as it was outside the

5

issues set forth in the pleadings, stating:

> A district court does not have jurisdiction to grant relief outside of the issues presented by the pleadings unless the parties stipulate that the other questions be considered or the pleadings are amended to conform to the proof. (Citing authority.) In *National Surety Corporation* [(1948), 121 Mont. 202, 192 P.2d 317], this Court recognized that "the rule in Montana as well as in other jurisdictions seems to be well settled that a judgment must be based on a verdict or findings of the court and *must be within the issues presented to the court.* . . .

In re the Custody of C.S.F., 232 Mont. at 209, 755 P.2d at 582 (Citations omitted).

Likewise, in this case, the district court ruled on matters outside the pleadings. There was no motion for modification before the court; in fact, the December Order specifically defined the issues which were before it as follows:

> The central issue before the Court is Petitioner's Motion for Final Determination of Visitation Rights. Ancillary thereto are contempt motions filed by each party against the other and Petitioner's motion for sanctions alleging Respondents [sic] violation of Rule 4(D)(1)(a), Montana Rules of Civil Procedure.

(Dec. Order at 1, para. 1.)

Terry and Peggy did not stipulate to the consideration of other issues or the amendment of the pleadings to conform with the proof, in accordance with the exceptions to the pleadings rule as stated by the Court in C.S.F. C.S.F., 232 Mont. at 209, 755 P.2d at 582. Therefore, the district court erred by modifying the custody and visitation provisions of the Final Decree since the only issue before

6

it with respect to custody and visitation was a request for a determination of the existing order. Furthermore, even if there had been a motion for modification before the district court, the December Order would, nonetheless, fail on appeal because the district court applied the wrong standard in modifying the children's custodial arrangement.

## II.

**THE DISTRICT COURT ERRED BY APPLYING THE "BEST INTERESTS" TEST WITHOUT MAKING THE REQUISITE JURISDICTIONAL FINDINGS SET FORTH AT MONT. CODE ANN. § 40-4-219 (1993).**

The visitation schedule set forth in this case, significantly changed the custodial arrangement for the parties' children and eliminated Peggy's designation as the children's primary custodian. The December Order, therefore, constitutes a modification of the Final Decree. Accordingly, the standard of review that the district court should have applied was the "serious endangerment" standard set forth at Mont. Code Ann. § 40-4-219 (1993). The district court's failure to utilize this standard constitutes reversible error and should, therefore, be reversed.

One indication of the court's intent to change, rather than merely clarify the existing visitation schedule was the removal of Peggy as the children's primary residential parent (Dec. Order at 11, para. 1). It is not necessary to eliminate the designation of the primary residential parent

7

merely because the parents share approximately equal time with the children in their primary care. In re the Marriage of Hoodenpyle, 241 Mont. 345, 787 P.2d 326 (1990). In Hoodenpyle, supra, the Montana Supreme Court affirmed the district court's finding that the petitioner had not met the statutory criteria set forth at Mont. Code Ann. § 40-4-219 (1993), and denied her request for modification of the prior decree stating:

> Once a custody arrangement is established, a party may move for modification under Section 40-4-219, MCA. However, one moving for a modification under the statute must prove that a change has occurred in the circumstances of the children or custodian that necessitates the change in accord with the best interest considerations set forth in Section 40-4-212, MCA . . .

Hoodenpyle at 347, 787 P.2d at 328.

The Hoodenpyle Court, like the court in the instant case, issued an order granting the parties visitation on alternate weeks. Id. However, the children in Hoodenpyle were both preschoolers and the Court expressly conditioned this arrangement on renegotiation of visitation when the children reached school age. Id. And, more importantly, during the duration of alternate week visitation, the Court in Hoodenpyle continued Respondent's designation as the children's primary custodian. Id.

Clarification and/or interpretation of unspecified rights of visitation set forth in a prior decree amounts to a modification where the clarification or interpretation alters the visitation rights of the parties. In re the

8

Marriage of Alpert, 258 Mont. 344, 852 P.2d 669 (1993). In Alpert this issue arose in the context of a UCCJA question, but the reasoning set forth by the Court is applicable in this case, since the context does not affect the analysis. In Alpert, the Court concluded that the distinction between "modification" and "clarification" was superficial:

> [I]n this case, the court's order altered the rights of the parties beyond that originally contemplated when the visitation provisions were left unspecified, and thus, modified those rights.

Alpert at 347, 852 P.2d at 671.

The Montana Supreme Court has recognized the inconsistencies in its prior decisions regarding the appropriate standard to be applied to cases where a party seeks a substantive change to those portions of a prior decree involving the custody and visitation of children. In re the Marriage of Johnson, 266 Mont. 158, 879 P.2d 689 (1994). In Johnson, supra, the Court phrased the issue before it as follows:

> When a party to a former dissolution proceeding moves to amend the decree in a way that substantially changes the residential living arrangements of the former couple's children without seeking a change in the legal designation of "joint custody," is the District Court's decision governed by the "best interest" standard found at Section 40-4-212, MCA, or by the "serious endangerment" standard found at Section 40-4-219(1)(c), MCA?

Johnson at 159, 879 P.2d at 691.

The Montana Supreme Court explained the seemingly contradictory rulings in the two leading cases on the issue

9

of the appropriate standard of review for custody modification cases at that time, In re the Marriage of Paradis, 213 Mont. 177, 689 P.2d 1263 (1984), and In re the Marriage of Gahm, 222 Mont. 300, 722 P.2d 1138 (1986) and their prodigy, stating:

> In summary, our prior decisions have held that where one party to a dissolution moves or petitions to modify a sole custody provision in the dissolution decree, then that party must satisfy the jurisdictional requirements of Section 40-4-219, MCA. However, if the original decree provided for joint custody and the motion to modify does not attempt to terminate joint custody, but simply alter the physical custody arrangements, the district court should consider the motion in light of the best interest standard established by Section 40-4-212, MCA. We have carved out an exception to the previous two rules where the form of a party's pleading asks for a modification of physical custody, but in essence terminates joint custody.

Johnson at 165, 879 P.2d at 694.

The Court elaborated on its explanation of the appropriate standard of review in custody modification cases in In re the Marriage of Allison, supra, stating:

> Motions or petitions to modify a sole custody provision or terminate a joint custody provision must satisfy the jurisdictional prerequisites set forth in Section 40-4-219, MCA. Likewise, a motion or petition to modify child custody provisions in a dissolution decree which ha[s] the effect of substantially changing the primary residence of the parties' children, even though the formal designation of "joint custody" is retained, are to be construed as motions or petitions to terminate joint custody and must satisfy the jurisdictional requirements set forth Section 40-4-219, MCA. Any effort to modify the physical custody, which does not seek a substantial change in the children's primary

10

residence, may be considered by the district court according to the best interest standard set forth in Section 40-4-212, MCA.

In re the Marriage of Allison, ___ Mont. ___, 887 P.2d 1217 (1994) (emphasis added) (quoting In re the Marriage of Johnson, 266 Mont. 158, 879 P.2d 689 (1994)).

Because the December Order of the district court substantially changed the children's primary residence and terminated Peggy's designation as the children's primary custodian, the district court should have construed the action as one to terminate joint custody and applied the "serious endangerment" test set forth at Mont. Code Ann. § 40-4-219 (1993). Instead, the district court committed reversible error by proceeding directly to the best interest standard set forth at Mont. Code Ann. § 40-4-212 (1993), without reference to the jurisdictional prerequisites.

The findings of the district court will be overruled on appeal where they are not supported by substantial credible evidence. In re the Matter of B.T., 223 Mont. 287, 725 P.2d 230 (1986). In this case, the record is void with respect to the jurisdictional requirements set forth in Mont. Code Ann. § 40-4-219 (1993), and, in fact, the December Order clearly states that the court applied the "best interests" test set forth at Mont. Code Ann. § 40-4-212 (1993), without making the requisite jurisdictional finding as set forth at Mont. Code Ann. § 40-4-219 (1993). (See, Dec. Order at 7, 1. 19; page 11, ll. 7-9.)

11

The substance of the relief sought by the moving party in an action for modification is more significant than the relief as stated in the formal pleadings. Johnson at 159, 879 P.2d at 693. Where the resulting visitation schedule constitutes a significant change in the children's schedule, modification actually amounts to termination of an existing joint custody situation. Id. In Johnson, which is factually similar to the present case, the Court held that, because the parties' relationship had deteriorated to the point where they were unable to communicate about their children's needs, contrary to the children's best interests, it would be beneficial to establish more specific visitation guidelines for the parties to follow. Johnson at 169, 879 P.2d at 696. The Court held that the district court, in changing the mother's designation as the children's primary custodian, actually modified the Final Decree, and therefore, the proper standard to be applied was the serious endangerment test, set forth at Mont. Code Ann. § 40-4-219 (1993). Johnson at 166, 879 P.2d at 694. In applying this standard, the Court held that the evidence presented by the father did not meet the "heavy burden" imposed upon a party seeking to modify a final decree, citing the underlying policy to "preserve stability and continuity of custody for the children." Johnson at 166, 879 P.2d at 695. The Court held that the district court had committed reversible error by, "substantially altering the custodial arrangements

12

provided for in its original decree." <u>Johnson</u> at 169, 879 P.2d at 696.

Even if the district court in this case had correctly applied the serious endangerment test, as opposed to the best interest test, it would have been error for it to grant the modification, as set forth in the December Order, since a finding that the statutory criteria set forth at Mont. Code Ann. § 40-4-219 (1993), had been met is not supported by the record.

## III.

## THE DISTRICT COURT ERRED BY MODIFYING THE FINAL DECREE WHERE THE STATUTORY CRITERIA SET FORTH AT MONT. CODE ANN. § 40-4-219 (1993) WERE NOT MET.

Since this Court should accept the logic set forth above, and find that the district court should have applied the serious endangerment test, it is obvious that the district court erred by failing to make the requisite findings of the statutory criteria set forth at Mont. Code Ann. § 40-4-219 (1993), which states, in relevant part:

> **40-4-219. Modification.** (1) The court may in its discretion modify a prior custody decree if it finds, upon the basis of facts that have arisen since the prior decree that were unknown to the court at the time of the entry of the prior decree, that a change had occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child and if it further finds that:

> . . . .

13

> (c) the child's present environment endangers
> seriously his physical, mental, moral or emotional
> health and the harm likely to be caused by a
> change of environment is outweighed by its
> advantages to him; . . .

Mont. Code Ann. § 40-4-219(1)(a) (1993).

Neither the record nor the findings of the district court support the existence of the statutory criteria necessary to support a modification of the custody and visitation provisions of the prior decree, pursuant to Mont. Code Ann. § 40-4-219 (1993). The district court was required to find that there was a change in circumstance subsequent to the entry of the Final Decree that indicated modification was in the best interests of the children; that the children's environment seriously endangered their mental, moral or emotional health; and, that the benefit of a change in environment would be outweighed by the advantages to the children. Mont. Code Ann. § 40-4-219(c) (1993).

## A.

**There was no change in circumstance**

**subsequent to the entry of the prior decree.**

At the hearing on Peggy's Motions for Final Determination of Visitation Rights and Contempt, neither party alleged any change in circumstance subsequent to the entry of the Final Decree sufficient to meet the threshold test set forth at Mont. Code Ann. § 40-4-219 (1993). Neither party has remarried, neither has had a significant

14

change in their respective lifestyle, neither is contemplating relocation, and neither has had any additional children. The December Order is silent with respect to any change in circumstance, nor was any change alleged by either of the parties. Therefore, this threshold element was not met, and the district court erred by modifying custody of the children.

**B.**

**There was no danger to the children's**

**physical, mental or emotional well-being.**

The December Order is also silent with respect to any danger to the children's well-being. Because the district court did not apply the serious endangerment test set forth at Mont. Code Ann. § 40-4-219 (1993), it made no findings as to whether the children's environment, as it existed at the October, 1994, hearing, endangered their physical, mental, moral, or emotional well-being. More importantly, the record does not indicate the existence of any serious endangerment to the children.

Because the district court made no finding of a change in circumstance arising subsequent to the entry of the Final Decree, as required by Mont. Code Ann. § 40-4-219 (1993), it could make no finding that such a change endangered the children's physical, mental, moral, or emotional well being. The failure of the district court to make a preliminary determination as to whether there had been a change in

15

circumstance subsequent to the entry of the Final Decree of dissolution which endangered the children's health or well-being as contemplated by Mont. Code Ann. § 40-4-219 (1993), rendered the court without jurisdiction to modify custody. However, even if the court had made the requisite initial finding of a changed circumstance, in accordance with the statute, the record does not establish any danger to the children.

## C.

**The harm to the children resulting from the change in environment outweighs the advantages.**

The district court made no indication in its December Order that it even considered whether the harm to the children resulting from the modification of visitation outweighed any advantage to the children. In fact, as the testimony set forth in section (d), below, clearly establishes, the record indicates that the children would benefit from a more stable, consistent environment.

## D.

**The modification is not in the children's best interests.**

Once the district court makes a finding that the jurisdictional requirements of Mont. Code Ann. § 40-4-219 (1993), have been met, it must then proceed to an analysis of the children's best interests. The record in this case does not support the court's finding that the visitation schedule set forth in the December Order and the elimination

16

of Peggy's designation as the children's primary residential parent is in the best interests of the children. In fact, the record supports the contrary. For example, Eleanor Truitt, a licensed clinical social worker who acted as a court-appointed guardian ad-litem for the boys, testified that parents must be able to negotiate and communicate to facilitate a custody and visitation schedule where the parents share equal time with the children. (See Transcript of Proceedings, dated October 20-21, 1994 [hereinafter "October Transcript"], Vol. I, page 276, lines 8-11.) Carmen Knudson-Martin, Ph.D., University professor and marriage and family therapist testified that on-going conflict between separated parents is the most damaging thing for their children (Oct. Tr., Vol. I at 30, ll. 3-4). Nona Faith, court administrator, family law mediator and mother of the Schaplow children's best friend, testified that she has not observed the type or degree of flexibility and communication between Terry and Peggy that would facilitate a successful 50/50 custody arrangement (Oct. Tr. Vol. I at 49, ll. 2-4). The procedural history of the antagonistic proceedings between Terry and Peggy supports Ms. Faith's observations. Dr. Marvin Backer, clinical psychologist working primarily in the area of child and family psychology, who counseled the parties in July of 1989, testified about the parties' inability to communicate about issues regarding their children at a hearing on

17

Temporary Custody on September 14, and 24, 1990:

Q. Can you describe the communication problems or the problems that the parties were having that they presented to you?

A. I think there were a number of problems, one had to do with decision making, of how they would reach decisions. And part of my function was essentially that of being mediator, trying to resolve some conflicts, trying to reach decisions with regard to the kids, particularly with reference to visitation and schedules. The parents seemingly had great difficulty doing this together. And it was one of the reasons that I offered my services.

Q. When you said "apparently", could you describe the problems the parties were having in deciding issues concerning their children?

A. I could. I guess my preference, Mr. Sinclair, is to speak in more general terms about a process rather than giving specifics. If you want specifics, I can do that.

Q. Can you describe the process?

A. Yes. One of the things that I was aware of is that there is a lot of bitterness that exists between those two people. There are ongoing conflicts that go back for years, there're [sic] communication problems that go back for years. We just have a different arena with which to deal with some of the power struggles that operate, some of the differences of opinion that exist between them. And so, when it came to the area of deadline with children, it wasn't terribly surprising that they would have as much difficulty reaching decisions there as maybe other areas of their marriage. Their ideas with regard to child rearing are somewhat different. There ideas with regard to what is in the childrens' [sic] best interests. Perhaps they're somewhat different. And so, when they would typically sit down and try to reach some decision about things, most often it was a stalemate. Frequently, there was no

18

resolution. So, there are ongoing areas of conflict which is maintained.

(Transcript of Proceedings, dated September 14 and 24, 1990 [hereinafter "September Transcript"], page 7, lines 8-25; p. 8, ll. 1-21.)

The record shows that there has been little or no improvement in the parties' ability to communicate and cooperate since Dr. Backer testified in 1990. In fact, both parties had to file Motions for clarification of the December Order, requiring Judge Cox to issue yet another order regarding visitation for the summer of 1995 (Order, dated June 28, 1995). Further, the district court specifically ruled, in its December Order, that the parties had attempted a weekly visitation schedule like the schedule set forth in the Order for a brief period of time during the spring and summer of 1994, but they were unable to continue and reverted to the pre-existing schedule (Dec. Order at 3, ll. 1-12). Even Terry, in suggesting a weekly visitation schedule, anticipated disagreements between the parties and suggested a strategy for the inevitable failure of the parties to cooperate whereby Judge Levitt would act as a mediator (Oct. Tr., Vol. II at 189, l. 9; p. 190, l. 5). None of the parties' numerous attempts at mediation since their divorce in 1989, have been successful. (See Statement of Facts, page 2, paragraph 6.) Obviously, the parties' communication skills will not enable them to sustain a weekly visitation schedule without substantial conflict. As witnesses for both parties and the parties themselves have

19

testified, this on-going conflict is contrary to the children's best interests.

## IV.

**THE DISTRICT COURT ERRED BY MODIFYING THE FINAL DECREE BECAUSE TERRY FILED NO AFFIDAVIT IN SUPPORT OF MODIFICATION, AS REQUIRED BY MONT. CODE ANN. § 40-4-220 (1993).**

Even if the district court had had a motion for modification before it, had applied the correct standard of review, had made the requisite findings, and had found modification to be in the children's best interests, the modification would, nonetheless, be erroneous, since the court did not have an affidavit before it setting forth the necessary statutory criteria. The moving party to a motion for modification of a custody decree must support his motion with an affidavit, in accordance with Mont. Code Ann. § 40-4-220 (1993), which states, in relevant part:

> **40-4-220. Affidavit practice.** (1) A party seeking a temporary custody order or modification of a custody decree shall submit, together with his moving papers, an affidavit setting forth facts supporting the requested order or modification and shall give notice, together with a copy of his affidavit, to other parties to the proceeding, who may file opposing affidavits. <u>The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits</u>, in which case it shall set a date for hearing on an order to show cause why the requested order or modification should not be granted.

Mont. Code Ann. § 40-4-220 (1993) (emphasis added).

There was no motion for modification before the court and, accordingly, neither party filed a supporting affidavit

20

in accordance with the Mont. Code Ann. § 40-4-220 (1993), and the resulting December Order should, therefore, be vacated. In In re the Marriage of Allison, supra, the Montana Supreme Court affirmed the ruling of the district court vacating an order changing residential custody, because it was not adequately supported by an affidavit as required by Mont. Code Ann. § 40-4-220 (1993). Allison, at ____, 887 P.2d at 1227.

The Court held the moving party to a strict standard of literal compliance with the statutory requirement set forth at Mont. Code Ann. § 40-4-220 (1993), because the statute is explicit and provides no exceptions. Id. at ____, 887 P.2d at 1227. The Court rejected the respondent's argument that the district court should have made an exception to the affidavit requirement since he did not have adequate information at the time he filed his motion for modification, stating, "[t]he statute provides no exception to the affidavit requirement, and we refuse to create one." Id.

Nor should this Court carve out an exception in this case. The fact that neither Terry nor Peggy actually filed a motion for modification should not excuse the fact that the district court modified the Final Decree without having before it a sworn affidavit setting forth the statutory criteria. It was improper for the district court to modify the Final Decree without an initial finding that the

21

threshold statutory criteria had been met and set forth in an affidavit. It was reversible error for the court to modify the Final Decree when there was no affidavit setting forth facts sufficient to establish grounds for modification in accordance with Mont. Code Ann. § 40-4-220 (1993).

## V.

## THE DISTRICT COURT ERRED BY ORDERING THE CHILDREN TO ATTEND THE CHURCH OF FATHER'S CHOICE WHILE THEY WERE IN MOTHER'S CUSTODIAL CARE IN VIOLATION OF HER FIRST AMENDMENT RELIGIOUS RIGHTS AND MONT. CODE ANN. § 40-4-218 (1993).

Montana law states:

> Except as otherwise agreed by the parties in writing at the time of the custody decree, the custodian may determine the child's upbringing, including his education, health care, and religious training, unless the court after hearing finds, upon motion by the noncustodial parent, that in the absence of a specific limitation of the custodian's authority, the child's physical health would be endangered or his emotional development significantly impaired.

Mont. Code Ann. § 40-4-218 (1993) (emphasis added).

In this case, the District Court abused its discretion when it ordered Peggy as the custodial parent to make sure the children attend the First Presbyterian Church against her wishes, solely because Terry desired the children to attend his church (Oct. Tr., Vol II at 169, ll. 5-13).

This is an issue of first impression in Montana. This Court in In re the Marriage of Gersovitz, 238 Mont. 506, 779 P.2d 883 (1989) held in a custody determination:

22

> [C]ourts will not debate the merits of different religions or <u>show preference to any religious faith</u>.

<u>Id.</u> at 885 (emphasis added).

However, the case at bar is not an issue of the custody based on religion. Rather, the district court held the children must attend the church chosen solely by Terry (Nov. Order; Dec. Order). It did so by ordering Peggy to assure their children attend his church during her custodial period. <u>Id.</u>

As this Court held in <u>Gersovitz</u>:

> [T]he first Amendment guarantees religious liberty and the right of parents to direct the religious upbringing of their children.

<u>Id.</u> at 885.

Judge Cox's orders state as follows:

> Terry shall return the boys to Peggy's house at 8:00 a.m. on Sunday on or after January 9, 1993 for the two five-week ski lessons, provided that Peggy takes the boys to each evening service at First Presbyterian Church for those Sundays. Peggy shall give Terry reasonable advance written notice of when said two five-week programs are to be held;

> Other than the said two five-week ski programs, the boys shall attend Sunday School uninterrupted from 9:00 a.m. to 10:00 a.m. at First Presbyterian Church.

(Nov. Order at 2.)

> Both parties shall ensure that the boys attend Sunday School and/or Church Services at First Presbyterian Church each Sunday that the custodial parent is not out of town.

(Dec. Order at 12).

It is impossible to perceive how, knowing Peggy's

23

objection, the court ordered the children to attend the First Presbyterian Church without violation of her custodial rights. Rather, the court mandated Terry's desire to the exclusion of Peggy's desire and her First Amendment legal rights.

In this case, Terry requested the court to order Peggy to make sure the children attend his church during her custodial period (Oct. Tr., Vol. II, at 201, ll. 1-2; p. 202, ll. 12-14; p. 222, ll. 6-19). Peggy objected to this requirement because the time of church services or Sunday school conflicted with her custodial plans (Oct. Tr., Vol. I, at 77, ll. 11; p. 81, l. 9). More importantly, Peggy did not prefer the First Presbyterian Church as Terry and his lawyer were both members of the church (Oct. Tr., Vol. II at 222, ll. 7-19). This made Peggy uncomfortable in attending the church and affected her attitude about the values of the church attendance for her children (Oct. Tr., Vol. I at 80, l. 41; p. 81, l. 9). Peggy requested each parent decide and pursue the religious programming for their children when they were in their care (Oct. Tr., Vol. I at 79, ll. 7-12).

Regional courts have addressed this issue. In <u>Munoz v. Munoz</u>, 79 Wash.2d 810, 489 P.2d 1133 (1971) the divorcing parties could not agree regarding the religious training for their two children. The matter went to trial. In the lower court, the judge awarded sole control over the children's religious training to the mother who was the physical

24

custodian. _Id._ at ____, 489 P.2d at 1134.

The Supreme Court of Washington reversed and modified the decree stating:

> [C]ourts are reluctant . . . to interfere with the religious faith and training of children where the conflicting religious preferences of the parents are in no way detrimental to the welfare of the child . . . constitutionally, American courts are forbidden from interfering with religious freedoms or to take steps preferring one religion over another.

_Id._ at 1135.

In the case at bar, there was no testimony nor allegation of jeopardy to the children's welfare requiring mandatory attendance for the children at First Presbyterian Church (Oct. Tr., Vol II at 169, ll. 5-13; p. 222, ll. 6-10). Rather, the entire testimony focused on _Terry's_ belief such religious training met _his_ desire to educate the children on _his_ religious beliefs (Oct. Tr., Vol. II at 169, ll. 5-13).

In this case, the district court's order for Peggy to assure the attendance of her children in Terry's religious training creates a preference for Terry's religion and excludes Peggy's desires. Moreover, in the event Peggy desires to provide no religious training to the children, the district court's December Order precludes her religious desire altogether.

In Ohio, the Court of Common Pleas, in the case of _Angel v. Angel_, 140 N.E.2d 86 (Ohio C.P. 1956), held:

> Generally speaking and apart from teachings that

25

are subversive of morality and decency and some others equally obnoxious, the courts have no authority over that part of the child's training which consists in religious discipline.

Id. at 87.

Terry has not alleged nor presented facts that Peggy's desire to choose her own religion for the children subversives their morality or decency (Oct. Tr., Vol II at 169, ll. 5-13). Rather, he merely desires to control Peggy and her religious choices for their children (Oct. Tr., Vol. II at 169, ll. 5-14; p. 200, l. 20; p. 201, l. 7).

This Court must honor the Constitution.

Courts should adhere to a policy of impartiality between religions and should intervene in this sensitive and constitutionally protected area *only* where there is a clear and affirmative showing of harm to the children. Restrictions in this area present the danger that court-imposed limitations will unconstitutionally infringe upon a parent's freedom of worship or be perceived as having that effect.

Khalsa v. Khalsa, 751 P.2d 715, 721 (N.M. Ct. App. 1988) (emphasis added).

In this case, the district court may not have intended to infringe on Peggy's freedom to worship or not, the reality is that she perceives her rights have not been upheld when she is ordered to educate her children in Terry's faith.

For these reasons, Peggy asks this Court to hold that the district court abused its discretion when it ordered her to assure the children attend Terry's choice of religion. Peggy asks this Court to order the district court to enforce

26

the law that grants a custodial parent the right to decide religious training during their custodial period. Mont. Code Ann. § 40-4-218(1) (1993).

## CONCLUSION

The district court committed reversible error by: (1) ruling on a motion that was not before the court; (2) applying the wrong standard of review; (3) modifying the decree without satisfying the statutory criteria set forth at Mont. Code Ann. § 40-4-219 (1993); (4) modifying the decree without satisfying the statutory mandate of Mont. Code Ann. § 40-4-220 (1993), requiring the filing of an appropriate affidavit; and (5) ordering Peggy to assure her children attend the church of only Terry's choice. For these reasons, Peggy respectfully requests that the December Order of the Eighteenth Judicial District Court be reversed and remanded.

## REQUEST FOR ORAL ARGUMENT

Petitioner/Appellant respectfully requests oral argument before this Court.

**RESPECTFULLY SUBMITTED** this 4th day of November, 1995.

Marcelle C. Quist
Kendra K. Anderson
Attorneys for Petitioner/Appellant

27

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th of November, 1995, a true and correct copy of the above and foregoing document was duly served upon counsel of record by depositing in the United States mail, postage prepaid, addressed as follows:

Edmund P. Sedivy, Jr.
SEDIVY, BENNETT & WHITE, P.C.
Attorneys at Law
P.O. Box 1168
Bozeman, MT 59715

_____
Marcelle C. Quist

28